Affirmed and Memorandum Opinion filed June 19, 2007








Affirmed and Memorandum Opinion filed June 19, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00543-CR

____________

 

RICHARD WESLEY RATCLIFF, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 04CR2862

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant guilty of the offense of indecency
with a child by contact, and the jury assessed punishment at ten years= confinement. 
Appellant raises issues of factual and legal sufficiency of the evidence. 
Because we find the evidence sufficient, we affirm.

Factual
Background








On the evening of September 13, 2004, R.B. (the complainant=s mother) took her
three sons, ages 8, 4, and 1 to dine at a Cici=s Pizza Restaurant
in Texas City.  The four-year-old son is the complainant.  Accompanying the
mother was her friend who brought her four-year-old grandson and three-year-old
granddaughter.  After the group sat down and began eating, the complainant, the
grandson, and the granddaughter all asked to go to the restroom.  Complainant=s eight-year-old
brother (the big brother) volunteered to go with them, and stood between the
entrances to the men=s and women=s restrooms
waiting for the children. 

While complainant and the grandson were in the boys= restroom,
appellant went into the restroom and locked the restroom door.[1] 
Seeing this, the big brother began banging the door with his fists, and kicking
the door until it opened and appellant walked out, followed by complainant and
the grandson.  The boys went back to the table where the big brother,
apparently shaken, told his mother that a man had entered the bathroom when
complainant and the grandson were still inside and he had locked the bathroom
door.  The boy pointed appellant out to the mother. 

Shortly after the children had returned from the restroom,
the grandson vomited on the table and on his grandmother.  The grandmother took
the child to the restroom to get cleaned up.  In the meantime, the big brother,
complainant, and the granddaughter went to the game room. 

While the children were in the game room, the big brother
saw appellant Adigging in [complainant=s] pants.@  He saw appellant
put his right hand in the front of complainant=s pants, although
he could not tell whether appellant=s hand was in
complainant=s underwear or not.  Later, complainant told his big
brother that appellant touched his privates.  The big brother went to his
mother, hysterically yelling that a man had touched complainant.  He told her
that it was the same man from the incident in the restroom.








The mother went to the game room and saw appellant huddled
over complainant.  She stood at the door to the game room and said complainant=s name.  Her son
looked at her, as did appellant out of the corner of his eye.  Complainant did
not respond.  She then said, A[C]ome on. Let=s go,@ and complainant
complied.  As the mother and complainant were walking back to their table,
complainant began pulling on the mother=s clothes and
saying AMomma, Momma.@  Then he said, AMomma, that man
touched me.@  When the mother asked where he was touched,
complainant responded, ADown there.@  The mother asked
complainant to touch himself where the man had touched him, and complainant put
his hand on his front private area, below the waist.  

The mother went to the cashier and asked to speak with the
manager.  She told the manager what had happened and that she wanted someone to
call the police.  As she was speaking to the manager, appellant attempted to
leave the restaurant, but the mother spotted him and identified him to the
manager.  Appellant walked hastily to his pickup truck, which had a business
sign on the side, and the manager followed him.  The manager walked up to the
driver=s window of the
truck, which was lowered, and told appellant that there was a woman in the
restaurant who had accused him of touching her son, and he needed to remain at
the restaurant until the authorities arrived.  Appellant looked down and said AYes, sir.@  As the manager
turned to walk back towards the restaurant, the mother and the assistant
manager held up their hands and said AHe=s leaving.@  When the manager
turned back around, appellant was driving out of the parking lot.

Officer Villareal of the Texas City Police Department
arrived on the scene, responding to an alarm call from a store sharing a
parking lot with Cici=s.  When the officer arrived, the mother
flagged him down and told him that her four-year-old child had been fondled. 
Officer Villareal interviewed the mother, the Cici=s manager, and
complainant about the event.  








The case was assigned to Corporal Clay Ruyle of the Texas
City Police Department Criminal Investigation Division.  The business sign on
the side of appellant=s truck provided a useful lead for
Corporal Ruyle.  Ruyle called the company, located in League City, and asked to
speak to the manager, who happened to be appellant.  Ruyle described the truck
to appellant.  Appellant said that the truck belonged to him, and that he had
eaten at the Cici=s restaurant after finishing a job in
LaMarque.  Appellant did not mention the allegation of abuse.  When asked,
appellant gave Ruyle his correct date of birth, but gave him the first name
Clifford, rather than his true name, Richard.  Ruyle testified that he finds it
significant when someone does not tell the truth.  Ruyle also testified that he
did not investigate how many people were at the Cici=s restaurant, nor
did he interview other witnesses or attempt to identify other potential
witnesses.

At the time of trial, almost two years after the offense,
complainant was six years old.  He testified that the front part of a boy is a Adong dong@ and the private
part a boy sits on is the Agluteus maximus.@  He remembered
going to Cici=s when he was four years old and he went to play a game. 
He was holding the game=s gun and appellant was right behind him. 
Complainant testified appellant touched him on his stomach, on top of his
clothes, and his hand did not go anywhere else.  Then complanant testified that
appellant=s hand was underneath his clothes.  Complainant then
said appellant touched his Agluteus maximus.@  Complainant did
not remember telling anyone that appellant touched his Adong dong.@  Complainant did
not like appellant touching him. 

I.        Legal
Sufficiency and Factual Sufficiency

In his first and second issues, appellant claims that the
evidence is legally and factually insufficient to support his conviction for
indecency with a child by contact.  

A.      Standards
of Review








In reviewing the legal sufficiency of the evidence, we view
the evidence in the light most favorable to the verdict, and determine if any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). 
We may not re-weigh the evidence and substitute our judgment for that of the
jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The
jury is the exclusive judge of the credibility of witnesses and of the weight
to be given their testimony, and it is the exclusive province of the jury to
reconcile conflicts in the evidence. Mosley v. State, 983 S.W.2d 249,
254 (Tex. Crim. App. 1998).  We act only to ensure that the jury reached a
rational decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993).  

When we review the factual sufficiency of evidence, we view
all the evidence in a neutral light, rather than in the light most favorable to
the verdict.  See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  We may set the verdict aside if the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or if the verdict is against the
great weight and preponderance of the evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  While we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We must discuss the evidence that,
according to appellant, most undermines the jury verdict.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

B.      Analysis

Appellant was charged with indecency with a child by
contact under Texas Penal Code Section 21.11(a)(1).  Tex. Penal Code ' 21.11(c)(1).  The
statute defines Asexual contact@ as including Atouching through
clothing...any part of the genitals of a child.@  Id. 
Appellant asserts the evidence is insufficient to support his conviction,
pointing specifically to the following: complainant testified in court that
appellant did not touch complainant=s genitals; the
mother and the big brother testified they did not see appellant touch
complainant=s genitals; the alleged offense occurred at a peak
dinner hour, 6:00 p.m., in a public part of the restaurant as depicted in
eleven photos of the area admitted into evidence, yet there was no eyewitness
testimony that appellant touched complainant=s genitals; and
the only evidence of the alleged sexual contact is complainant=s outcry statement
as testified to by complainant=s mother.  Appellant argues that the
outcry statement, given by a four-year-old child, is inconsistent and is not
reliable.  Therefore, appellant asserts the jury could not have reasonably
found him guilty of the charged offense beyond a reasonable doubt.  In making
his argument, appellant ignores controlling statutory and case law.








Article 38.072 of the Texas Code of Criminal Procedure
provides for the admission of hearsay testimony of Aoutcry@ statements made
by a child abuse victim twelve years of age or younger to an adult where the
state complies with the statutory predicate.  See Tex. Code Crim. Proc. art. 38.072. 
Once the requirements are met, the outcry testimony is admitted as substantive
evidence of the crime.  See Martinez v. State, 178 S.W.3d 806, 811 (Tex.
Crim. App. 2005).  In the present case it is undisputed that the State complied
with the statutory predicate for the admission of the outcry testimony under
article 38.072.  The trial court specifically found that Athe statement is
reliable based on time, content and circumstances.@  

Outcry testimony alone is sufficient to sustain a
conviction for indecency with a child by contact.  See Rodriguez v. State,
819 S.W.2d 871, 873B74 (Tex. Crim. App. 1991); Diaz v.
State, 125 S.W.3d 739, 743 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d).  The probative value of outcry
testimony may remain intact, even when the child abuse victim testifies at
trial inconsistently with his prior statement.  See Chambers v. State,
805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

In the present case, the outcry testimony is not the only
evidence against appellant that supports his conviction.  The mother also
testified that her son, the big brother, was shaken when he told her that
appellant had locked himself in the bathroom with complainant and the grandson. 
After that, when the big brother rushed to tell her the same man, appellant,
was touching complainant in the game room, the mother saw appellant huddled
over complainant in the game room.  As soon as the mother got complainant out
of the game room and back to the table, complainant made an outcry, telling his
mother that appellant had touched his front private area.  








The big brother was the second to testify.  After he told
the jury about the bathroom incident, he testified that he saw appellant in the
game room holding complainant and Adigging in@ complainant=s pants; he later
testified that he could clearly see appellant=s hand in the
front part of complainant=s pants.  The big brother also testified
that complainant told him later that appellant touched his privates.  

Third, complainant, who was six years old at trial,
testified.  Although some of his testimony was inconsistent, the jury heard
from complainant that while he was playing a video game, appellant was right
behind him; appellant touched him underneath his clothes; and appellant touched
his Agluteus maximus.@  With regard to
any inconsistencies, as with any witness, the jury was free to believe all,
some, or none of complainant=s testimony.  See Cain v. State,
958 S.W.2d at 407 n.5.  

Additionally, the jury heard evidence indicating appellant=s consciousness of
guilt.  Appellant fled the area, and he lied about his first name to the police
detective.  Both circumstances could have been considered by the jury as
evidence of consciousness of guilt from which the jury could have inferred
appellant=s guilt.  See Bigby v. State, 892 S.W.2d 864,
884 (Tex. Crim. App. 1994); Felder v. State, 848 S.W.2d 85, 98 (Tex.
Crim. App. 1992). 

The evidence supporting the conviction is also not
overwhelmed by the fact that the assault occurred around 6:00 p.m., allegedly
in plain view, as shown by the eleven photographs of the restaurant.  This is
just another factor that would weigh against the credibility of the witnesses. 
However, as stated above, we defer to the jury in matters of credibility.  See
Drichas, 175 S.W.3d at 799.  It was up to the jury to decide to what extent
the offense happened in plain view, and also to what extent this would detract
from the credibility of the witnesses.  The location and time of the assault do
not make the evidence supporting conviction factually insufficient.

Conclusion

From our review of the evidence under the applicable
standards, we conclude the evidence is both legally and factually sufficient to
support appellant=s conviction.  Accordingly, we overrule
appellant=s issues.

We affirm the judgment.  

 

 

/s/      Margaret Garner Mirabal

Senior Justice

 

Judgment rendered and Memorandum
Opinion filed June 19, 2007.

Panel consists of Justices Anderson
and Frost and Senior Justice Mirabal.[2]

Do Not Publish C Tex.
R. App. P. 47.2(b).

 









[1]  The bathroom was described by the restaurant manager
as a single person restroom.  It contains both a urinal and a toilet, and the
toilet is surrounded by a stall with a door.  The manager testified that if
someone else were in the bathroom when a person went in, he would know it
immediately. 





[2]  Senior Justice Margaret G. Mirabal sitting by
assignment.