Jorge Alfredo **SALINAS**, Appellant

v.

**The STATE of Texas.**

**No. AP–74524.**

Court of Criminal Appeals of Texas.

May 18, 2005.

Theodore C. Hake, Asst. District Atty., Edinburg, Matthew Paul, State's Atty., Austin, for State.

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Appellant was convicted in August 2002 of capital murder. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises six points of error. We reform appellant's death sentence to a sentence of life imprisonment, and otherwise affirm.

■ In point of error two, appellant claims the evidence is legally insufficient to establish a specific intent to kill. In determining the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Appellant, his brother Lorenzo, and Oscar Villa Sevilla were at appellant's house in Mission on the night of Saturday, July 28, 2001, smoking marijuana. Sevilla stated that he wanted to get a gun and steal a car. Appellant said, "Let's see if you have the balls; let's go." Appellant retrieved a shotgun that he had previously stolen and gave it to Sevilla. Appellant and Sevilla walked to a nearby intersection. Sevilla jumped out and pointed the shotgun at the

Rogelio Garza, Edinburg and Alfredo Morales, Jr., McAllen, for Appellant.

---

1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.

first car to stop at the four-way stop. Geronimo Morales was driving the car, and his 21-month-old child, Leslie Ann Morales, was in her car seat in the back. Sevilla pounded on the window, and Morales opened the door. Sevilla got into the driver's seat and forced Morales over to the passenger's seat. Sevilla handed appellant the gun, and appellant pointed it at Morales. Morales cried and pleaded with them not to hurt the baby. Appellant got into the back seat of the car while still pointing the gun at Morales. Sevilla grabbed Morales by the hair and began hitting him. Sevilla asked Morales for his money, but Morales stated that he did not have any. This made Sevilla angry, and he beat Morales some more. Sevilla stopped the car, retrieved the gun from appellant, and dragged Morales into some orchards and shot him. He stole Morales' wallet, a gold ring, and a silver necklace with a skull on it.

Sevilla returned to the car, and appellant suggested that they return to his house and pick up his brother Lorenzo. When Lorenzo got into the car, he asked them what they were going to do with the baby. Lorenzo suggested that they leave her at a store or someplace where someone would find her, but Sevilla said they were going to dump her where no one would find her. They drove to an area south of town about a half a mile from the Rio Grande River, and close to La Lomita Mission. Appellant and Lorenzo [2] took the baby out of the car, still in her car seat, and placed her in some tall grass.

The three then drove Morales' car to Maria Alma Rosa Acevedo Pineda's house in Reynosa, Mexico, arriving between 10:30 and 11:00 p.m. on July 28, 2001. Pineda's husband was a first cousin to appellant and Lorenzo. Appellant initially told Pineda that the car belonged to Sevilla. Lorenzo gave Pineda's son a silver necklace with a skull on it, which was later identified as Morales' necklace. Later that night, appellant told Pineda that he had something he wanted to tell her, but he was afraid she would tell someone else. He then told her that they had "broken some guy," but Pineda did not believe him. Pineda stated that the phrase "broken some guy" means "to kill, to break, to shoot some person."

The three cohorts tried to sell Morales' car in Reynosa, but were unsuccessful. On Sunday, July 29, Reynosa police attempted to stop them while they were driving Morales' car. A chase ensued, and they abandoned the vehicle. Reynosa police seized the car and turned it over to authorities in the United States. The three cohorts returned to the United States on Monday after selling the shotgun. Appellant told his girlfriend about what they had done and took her to see Morales' body where they had left it.

Leslie Ann's body was found by border patrol officers around 7 p.m. on July 29, 2001. The officers were patrolling south of La Lomita Mission near the river, looking for illegal aliens who might be hiding in the grass. The patrol officer who testified stated that the child was in an area where she was not likely to be found. Other testimony placed her approximately fifteen feet from the road in grass that was two to three feet high. The medical examiner testified that Leslie Ann died from dehydration, exposure to the elements, and heatstroke.

Morales' body was found on August 1, 2001. He died from a gunshot wound at close range to the right side of the head.

---

**2.** This can be inferred because appellant's fingerprint was found on the bottom of the car seat, and two of Lorenzo's prints were found elsewhere on the car seat. Sevilla's prints were not found on the car seat.

Appellant argues that the evidence does not support a finding that he had a specific intent to kill anyone or to assist, promote, or encourage Sevilla in committing the murders. He contends, "The only thing he intended to do, and agreed with, was to steal a car at gun point." He claims Sevilla alone formulated, during the course of the robbery, the specific intent to kill the victims. Appellant says the murders, at least on appellant's part, were unintended, unplanned and random, spurred only by his co-hort's independent impulse. He claims he could not have reasonably foreseen or anticipated Sevilla's actions when they stole the car.

The indictment charged appellant with capital murder in three separate counts. The first count charged him with the murder of Morales while in the course of committing or attempting to commit robbery of him. The charge required the jury to find that (1) appellant intentionally caused Morales' death while in the course of robbing him; or (2) either Lorenzo or Sevilla had done so, under circumstances rendering appellant responsible under the law of parties. The second count charged appellant with committing the murders of Morales and Leslie Ann in the same criminal transaction. The charge required the jury to find that (1) appellant intentionally or knowingly caused their deaths; or (2) either Lorenzo or Sevilla had intentionally or knowingly caused their deaths, under circumstances rendering appellant responsible under the law of parties, or because the murders were the anticipated result of a conspiracy to commit another offense (robbery). Appellant was charged in the third count with the murder of Leslie Ann, an individual younger than six years of age. The jury charge required the jury to find that (1) appellant intentionally or knowingly caused the death of Leslie Ann; or (2) either Lorenzo or Sevilla had intentionally or knowingly caused her death,

under circumstances rendering appellant responsible under the law of parties, or because the murder was the anticipated result of a conspiracy to commit another offense (robbery).

The court submitted a separate jury charge for each count, along with a separate verdict sheet for each count. The jury found appellant guilty of each count. Appellant does not argue his insufficiency claim specifically as to any one or more of the counts.

■ Appellant's claim that the evidence does not support a finding that he had specific intent to kill is applicable only to count one because that is the only theory under which intentionally causing death is an element. His conviction could be supported under counts two and three upon a finding that he acted intentionally *or knowingly*. Because the jury found appellant guilty under each of the three theories separately, two of which do not require a finding that applicant acted intentionally, appellant's argument regarding legal insufficiency to prove specific intent is moot.

■ In a conclusory statement, appellant also claims that the evidence is insufficient to support a finding that appellant assisted, promoted, or encouraged Sevilla in committing the murders. He further asserts that he could not have reasonably foreseen or anticipated Sevilla's actions in killing the victims. We address these contentions in the interest of justice.

■ "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App.1994). Party participation may be shown by events occurring before, during, and after the commission of the

offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Id.*

According to appellant's own confession, when Sevilla stated that he wanted to commit a carjacking, appellant dared him to do it and provided him with a shotgun. Sevilla's intent to do more than steal the car was apparent. If Sevilla had intended only to steal the car, he could have ordered Morales and Leslie Ann out as soon as he stopped the car, and left them at the side of the road. Instead, Sevilla handed the shotgun to appellant, who pointed it at Morales as Sevilla got in and drove to a remote area. Appellant did nothing as he watched Sevilla drag Morales from the car and shoot him. Later, Sevilla stated his plan to leave Leslie Ann where she could not be found, rejecting Lorenzo's suggestion to leave her in a public place where she could be found. The evidence supports the inference that appellant and Lorenzo removed Leslie Ann from the car, still strapped in her car seat, and placed her in tall grass fifteen feet from a road and outside of town. The evidence is sufficient to support a finding that appellant encouraged and participated in, as a party, the murders of Morales and Leslie Ann. Point of error two is overruled.

In his first point of error, appellant claims that he was denied the effective assistance of counsel at trial for several reasons. To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mallett v. State,* 65 S.W.3d 59, 62–63 (Tex. Crim.App.2001). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Mallett,* 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim. App.1999). "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett,* 65 S.W.3d at 63. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson,* 9 S.W.3d at 813 (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

Appellant alleges that his trial counsel was ineffective because he did not file a motion to transfer venue. Appellant claims he told his counsel that he wanted a change of venue, and that he was prepared to file his own affidavit and the affidavits of two other compurgators stating that the media coverage was incessant and the community sentiment was overwhelmingly negative and antagonistic toward appellant. Appellant points to nothing in the record in support of his allegations. In the absence of anything in the record affirmatively demonstrating otherwise, we presume that his counsel made a reasonable and strategic decision not to ask for a change of venue. *See Mallett,* 65 S.W.3d at 63.

Appellant also contends that his trial counsel was ineffective for failing to allow appellant to testify on his own behalf at the guilt phase of the trial. Appellant claims his counsel advised against testifying due to appellant's prior convictions, but appellant remained adamant

about wanting to testify. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *see also Maddox v. State*, 613 S.W.2d 275, 280 (Tex.Crim.App.1980)(recognizing that attorney has duty to protect client's right to testify). However, appellant's assertions in his brief on appeal, in the absence of anything in the trial record, are insufficient to show that he asserted his right to testify and his attorney failed to protect it. *Mallett*, 65 S.W.3d at 63.

Appellant next contends that his trial counsel was ineffective for failing to file a motion to quash the indictment or request a severance. Appellant claims that his indictment charged him with three separate and distinct capital murders,[3] and contends that trial counsel should have recognized the indictment as "defective, misjoined, or subject to a severance." He complains that trial counsel should have filed a motion to quash, a motion for election, or a motion for severance.

Trial counsel did file a Motion to Quash and/or Sever in which he complained of the three-count indictment and requested a severance of the charges. In the alternative, counsel asked that the indictment be quashed. Finally, he asked that the State be required to elect the charge on which it would proceed. The motion was addressed in a pretrial hearing. Appellant's counsel did everything appellant contends he should have.[4]

Finally, appellant claims that his trial counsel was ineffective for failing to request an instruction on the lesser-included offense of felony murder in the court's charge at the guilt phase of the trial. Although appellant's attorney requested and received a charge on the lesser-included offense of murder, appellant argues that a charge on felony murder would have been more appropriate.

■■■ A charge on a lesser-included offense should be given when (1) the lesser-included offense is included within the proof necessary to establish the offense charged; and (2) there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. *See, Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993); *Feldman v. State*, 71 S.W.3d 738, 750–51 (Tex.Crim.App. 2002). In meeting the second prong, there must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Feldman*, 71 S.W.3d at 750. Felony murder is a lesser-included offense of capital murder. *Rousseau*, 855 S.W.2d at 673. Culpable mental state is the only difference between the two offenses. "Capital murder requires the existence of an 'intentional cause of death,' . . . while in felony murder, 'the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying . . . felony. . . .'" *Id.* (quoting *Rodriquez v. State*, 548 S.W.2d 26, 29 (Tex.Crim.App.1977)).

■■■ The second prong of the test is not satisfied here, however, because the evidence did not raise any issue of felony

3. In a three-count indictment, appellant was charged with capital murder in the course of a robbery, committing multiple murders in the same criminal transaction, and murder of a child under the age of six.

4. Defense counsel ultimately withdrew his motion to sever after the trial court made clear that it would not exclude evidence concerning the other counts, even if they were severed. Appellant does not complain that his counsel was ineffective in withdrawing the severance motion.

murder. Appellant contends his counsel could have reasonably argued that the evidence showed felony murder—that in the course of committing a felony (robbery or kidnapping), and in furtherance of that particular felony, appellant committed an act clearly dangerous to human life that resulted in the death of an individual. The critical question is whether the evidence showed that appellant (as a principal or a party) had the intent only to rob or to kidnap, and he did not have the intent to kill. *See Santana v. State,* 714 S.W.2d 1, 9 (Tex.Crim.App.1986). Dragging Morales from the car and shooting him in the head with a shotgun at close range were not merely acts clearly dangerous to human life that resulted in a death. Likewise, placing Leslie Ann, a 21–month–old child, strapped into her car seat, in tall grass fifteen feet from a road and outside of town, was not merely an act clearly dangerous to human life. Whether appellant was the actual actor or criminally responsible for the acts of his cohorts by virtue of the law of parties, the evidence shows not *only* an intent to commit robbery or a lesser included offense, but *also* the intent to kill. Thus the evidence did not raise the issue of felony murder. Appellant was not entitled to a charge on the lesser-included offense of felony murder and therefore his counsel was not ineffective when he did not request one. Point of error one is overruled.[5]

In his fifth point of error, appellant claims that the trial court erred in denying his motion to impose reasonable restrictions on the media's coverage of pretrial

hearings. He contends that such coverage might have tainted the jury pool.

■ In a written motion entitled Motion to Restrict Publicity, appellant requested that all pretrial hearings be held in chambers, outside the presence and hearing of the public and press. At a pretrial hearing addressing the motion, appellant stated that he wanted to restrict the media's coverage of pretrial hearings so that witnesses who would later be placed under "the Rule"[6] during trial would not have access to certain information or testimony via news reports on pretrial hearings. As an "alternative solution," appellant suggested admonishing the witnesses, like the jury, that they were not to read the paper or watch television. The court stated that it was not inclined to limit the media as broadly as stated in appellant's written motion, but agreed that a witness admonishment like that suggested by appellant at the hearing "may be a good practice." The court stated that it would consider the option, but was not ready to rule on it at that time. The court asked that appellant bring it to his attention later, before the Rule was invoked. Appellant does not point to any place in the record where he ultimately obtained a ruling on the issue. In stating that he was willing to accept an alternative solution to his complaint about media reports on pretrial hearings, appellant therefore waived the complaint as raised in his written motion. Further, in failing to obtain a ruling on his proposed alternative solution, he failed to preserve that issue for review.[7]

---

5. Appellant also claims that his counsel was ineffective for failing to request an anti-parties instruction in the court's charge at punishment. Because we sustain appellant's sixth point of error and reform appellant's death sentence to a life sentence, any other complaints about alleged errors in the punishment phase of the trial are moot.

6. Tex.R. Evid. 614.

7. Appellant's written motion also requested that five other restrictions be placed on the media coverage of the case. At the hearing, the court granted some of those requests and denied some of them. Appellant does not

Tex.R.App. P. 33.1. Point of error five is overruled.

 In his sixth point of error, appellant contends that because he was seventeen years old when the crime was committed, assessment of the death penalty against him violates the Eighth Amendment to the United States Constitution. In support of this claim, appellant cites *State ex rel. Simmons v. Roper*, 112 S.W.3d 397 (Mo.2003), in which the United States Supreme Court granted certiorari to reconsider whether the Eighth Amendment is violated by the imposition of the death penalty against a criminal defendant who was seventeen years old when he committed the capital crime.

The United States Supreme Court has since decided *Roper v. Simmons*, 544 U.S. ——, 125 S.Ct. 1183, 161 L.Ed.2d 1. The Court has now held that the "Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." 125 S.Ct. at 1200, 161 L.Ed.2d at 28.

 There is evidence in the record that appellant was seventeen years old when he committed the instant offense, and the State does not contend otherwise. The offense was committed on or about July 28, 2001. Appellant's statement indicates that his birthdate is April 1, 1984. The booking sheet, the arrest report, the arrest warrant, and the trial court's docket sheet, all contained in the record, reflect that appellant's date of birth is April 1, 1984. In addition, defense counsel re-

ferred to appellant repeatedly in closing argument as a "17–year–old," and the State did not object. In view of the State's implied concessions and the documents consistently reflecting appellant's birthdate, the record adequately reflects that appellant was younger than eighteen years of age at the time of the offense. Pursuant to the Supreme Court's mandate in *Simmons,* appellant's death sentence is hereby reformed to a sentence of life imprisonment. Tex.R.App. P. 78.1; *Herrin v. State,* 125 S.W.3d 436, 444 (Tex.Crim.App. 2002); *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Point of error six is sustained.

We modify the judgment of the trial court to reflect a sentence of life imprisonment.[8] In all other respects, the judgment of the trial court is affirmed.[9]

WOMACK and KEASLER, JJ., concurred.

---

8. We note that there are three separate judgments and death sentences in this case, one for each count. Each judgment and sentence is hereby modified to reflect a sentence of life imprisonment.

now appear to complain of any of those rulings.

9. In points of error three and four, appellant complains about alleged errors in the punishment phase. Because we reform appellant's death sentence to a sentence of life imprisonment, points three and four are moot.