# NO. 12-05-00263-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANTHONY WASYLINA,* *APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *OPINION ON REMAND*

Anthony Wasylina appeals his conviction for criminally negligent homicide, for which he was sentenced to confinement for two years, probated for five years. On original submission, in one issue, Appellant argued that the trial court improperly submitted in its charge the lesser included offense of criminally negligent homicide. *See **Wasylina v. State***, No. 12-05-00263-CR, 2007 WL 677778, at *1 (Tex. App.–Tyler Mar. 7, 2007) (op. on reh'g). We determined that there was no evidence that Appellant was guilty of only criminally negligent homicide and sustained Appellant's sole issue. ***Id.***, at *4. We further determined that such error caused Appellant harm and sought to craft the appropriate remedy. ***Id.***, at *5–6. In so doing, we considered sua sponte the issue of legal sufficiency[1] and concluded that a rational trier of fact could not have found beyond a reasonable doubt that Appellant acted with criminal negligence. ***Id.***, at *6–7. Accordingly, we reversed the trial court's judgment, and rendered a judgment of acquittal. ***Id.***, at *7. The State filed a petition for discretionary review, which was granted. Concluding that proof of recklessness suffices to prove criminal negligence, the court of criminal appeals reversed our judgment and remanded the cause

---

[1] *See **id.**,* at *6 (citing ***Hampton v. State***, 165 S.W.3d 691, 694 (Tex. Crim. App. 2005)).

for our further consideration of Appellant's sole issue. *See **Wasylina v. State***, No. PD-0519-07, 2009 WL 187831, at *2 (Tex. Crim. App. Jan. 28, 2009) (citing TEX. PENAL CODE ANN. § 6.02(e)).[2] We reverse and remand.

## BACKGROUND

Appellant owns a cabin on property located in rural Anderson County, Texas. On August 1, 2003, Appellant, Bryan Lenoir, Lenoir's wife, Amy, and Michael Slater gathered at Appellant's cabin to visit and ride four wheelers in the area near Appellant's cabin.[3]

At approximately 7:00 p.m., Lenoir, Amy, and Appellant rode four wheelers to a nearby boat ramp on the Trinity River. There, they encountered a man in a pickup truck named James Guthrie.[4] Guthrie appeared very intoxicated and acted in an unusual manner. The group spoke with Guthrie for about forty-five minutes before leaving to return to Appellant's cabin.

As the group rode the four wheelers back to Appellant's cabin, they noticed that Guthrie was following them in his truck. Appellant stopped, and Guthrie pulled up beside him. Guthrie told them[5] he was just making sure they lived where they had told him they lived. The group again set out for Appellant's cabin.

When they arrived, Guthrie drove past them, but turned around and stopped his truck to talk to Appellant's neighbor, Thomas Foster. After a few minutes, Appellant walked over to where Guthrie and Foster were standing to find out what the problem was. Lenoir's wife, Amy, overheard Guthrie tell Foster he thought the people in the group were poachers. During the discussion, Guthrie made a pass at Amy and told her to "dump these losers and come smoke dope" with him. Soon

---

[2] The court expressed no opinion concerning whether the evidence was legally sufficient to show manslaughter or its constituent culpable mental state of recklessness. *See id.*, at *2 n.14. The court granted discretionary review to determine whether the remedy we crafted was appropriate. *Id.* (Price, J. concurring). The court did not grant discretionary review to examine our holding that the lesser included offense instruction was submitted erroneously. *Id.* at n.4.

[3] The record reflects that Appellant and Lenoir were drinking beer that day. Lenoir stated that the men had consumed two or three beers at the most. In his statement to police, Appellant stated that he had consumed seven or eight beers over a five hour time period.

[4] The record reflects that Guthrie identified himself only by his first name.

[5] Amy Lenoir was riding on the back of Appellant's four wheeler.

2

thereafter, the group told Guthrie that they were going to go riding on their four wheelers again, and Guthrie left in his truck.

Appellant, Lenoir, Amy, Foster, and Foster's son, Andrew, then congregated on the porch at Appellant's cabin. Subsequently, Lenoir noticed a light coming down the road that he believed to be a four wheeler. Next, the group heard gunshots being fired from an area near Foster's property. Appellant, who was armed with a .357 magnum handgun, and Foster went to investigate. As they approached Foster's truck, Appellant saw a muzzle flash, heard two gunshots, and heard the shots traveling through the trees above them. As the two drew closer to Foster's truck, Foster heard the sound of metal scraping and yelled to a person he saw trying to hide behind the truck to get away from it. Foster then heard another gunshot, saw a muzzle flash near his truck, and stated that it seemed the shot went over his head. Appellant pointed his flashlight toward the shooter, and Guthrie emerged from behind the truck.

Foster could see a gun in Guthrie's left hand, which Guthrie held down by his side. Guthrie had a liquor bottle in his right hand. Lenoir, armed with a 30.30 rifle, came to where the men had gathered. Guthrie put the gun in his pocket. Lenoir knocked the bottle out of Guthrie's right hand. Appellant, who now had his gun drawn, and Guthrie began to yell at one another. The two men were about four to five feet apart. Foster later stated that everything was happening very quickly. Appellant told Guthrie to stay where he was because Appellant was going to call the sheriff. Guthrie then lunged toward Appellant and pushed Appellant in the face causing Appellant to fall backwards.[6] As Appellant fell backwards, his handgun discharged a round,[7] which struck Guthrie in the forehead. Guthrie died from this wound. Appellant and Lenoir placed their firearms on the ground, and Foster immediately called 9-1-1.

Appellant was charged with manslaughter and pleaded "not guilty." The matter proceeded to jury trial. After the close of evidence, the trial court conducted a charge conference. During the

---

[6] Although he fell backwards, Appellant did not fall to the ground.

[7] There is contradicting evidence in the record on this point. In his written statement to police, Appellant stated that his gun "went off." However, during Appellant's cross examination of Investigator Chuck Franklin concerning a taped statement Appellant gave on the night in question, Franklin testified that Appellant said on the tape he "shot" Guthrie. Franklin further testified that based on his investigation, he felt that Appellant "intentionally fired his gun."

3

charge conference, Appellant objected to the submission of the lesser included offense of criminally negligent homicide arguing that the issue of negligent conduct as opposed to intentional or reckless conduct was not raised by the evidence. The trial court overruled Appellant's objection. Ultimately, the jury found Appellant "not guilty" of manslaughter, but found Appellant guilty of criminally negligent homicide.[8] The trial court sentenced Appellant to confinement for two years, but probated Appellant's sentence and placed him on community supervision for five years. This appeal followed.

## LESSER INCLUDED OFFENSE

In his sole issue, Appellant argues that the trial court erred in submitting the lesser included offense of criminally negligent homicide because the evidence does not support that he acted with criminal negligence.

### Governing Law

An offense is a lesser included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *see also* **Hall v. State**, 225 S.W.3d 524, 527 (Tex. Crim. App. 2007). Furthermore, a charge on a lesser included offense should be given only when there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. *See* **Salinas v. State**, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); **Rousseau v. State**, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). Appellant concedes that criminally negligent homicide is a lesser included offense of manslaughter. *See* **Stadt v. State**, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005). Thus, in our analysis, we will focus on whether there is any evidence of record that would permit a rational jury to find that the defendant is guilty of criminally negligent homicide, but not

---

[8] The jury was given a self defense instruction in the court's charge.

manslaughter.

To support a conviction for criminally negligent homicide, the evidence must show that the defendant caused the death of an individual by criminal negligence. *See* TEX. PENAL CODE ANN. § 19.05(a) (Vernon 2003). A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(d) (Vernon 2003). The elements of manslaughter differ from criminally negligent homicide only as to the requisite mental state. *Compare* TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003) *with* TEX. PENAL CODE ANN. § 19.05(a). Manslaughter requires that the actor behave recklessly. *See* TEX. PENAL CODE ANN. § 19.04(a). A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003). Recklessness has been described as involving conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof. *See Stadt*, 182 S.W.3d at 364. Criminal negligence has been described as involving inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result thereof, but fails to perceive the risk. *Id.*

**Perception of Risk Associated with Firearms**

The court of criminal appeals' opinion in ***Thomas v. State***, 699 S.W.2d 845 (Tex. Crim. App. 1985) is instructive on the issue before us. In ***Thomas***, there was conflicting testimony concerning whether a shooting was accidental. *Id.* at 849. In its analysis, the court stated as follows:

> Every case in which someone points a loaded gun at another does not require that a charge on criminally negligent homicide be given. Nor does the allegation of accidental discharge necessarily raise the issue. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct (citation omitted) . . . Other evidence raising the issue of whether or not a defendant was aware of the risk must be presented before such a charge is required.
>
> Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk.

5

....

> Accidental discharge alone does not raise the issue [of criminally negligent homicide]. Rather, every case must be examined in light of its particular facts and circumstances to determine if the defendant was unaware of the risk his conduct created.

*Id.* at 850. After noting that some evidence of record reflected that (1) the appellant was familiar with the gun, (2) the appellant was unsure whether or not the gun was loaded, (3) the appellant exhibited the gun and pointed it at the deceased with his finger on the trigger, (4) the appellant knew it was possible to fire it and harm the deceased, and (5) the gun accidentally went off as the appellant struggled with the deceased, the court held that the evidence may have entitled the appellant to a charge on involuntary manslaughter, but did not raise criminally negligent homicide. *Id.* at 852.

**Appellant's Perception of Risk**

In the case at hand, there is some evidence to support that Appellant's shooting Guthrie was accidental, i.e., the gun "went off." But as the court of criminal appeals held in *Thomas*, accidental discharge alone does not raise the issue of criminally negligent homicide. *See id.* at 850. Thus, for us to conclude that the trial court properly included the offense of criminally negligent homicide in the jury charge, there must be some evidence that Appellant was unaware of the risk his conduct created. *See id.* Our perusal of the record does not reveal any evidence that Appellant failed to perceive the risk of approaching the source of gunfire while armed himself or pointing his gun at an armed man who was visibly intoxicated and in close proximity to him.

To the contrary, the record reflects that Appellant was familiar with guns and had previously fired the gun with which he was armed on the night in question. Furthermore, the record reflects that Appellant loaded his own shells,[9] but does not indicate if Appellant in fact knew that his gun was loaded on the night in question. When considering the type of handgun Appellant owned and the length of the barrel in conjunction with the notion that the person who owned such a gun loaded his own shells, Texas Ranger Rudy Flores testified that the weapon's owner was likely an "avid shooter" and had "a good amount of knowledge of his firearm and his

---

[9] The record reflects that Appellant's .357 magnum handgun was loaded with "light loads," that is one half the powder of an ordinary commercially produced round. Such a load, according to the evidence, might typically be used in target shooting.

equipment." The record further indicates that Appellant had hunted in the past. In his written statement to police, Appellant stated that as they walked toward where the shots originated he "could hear the bullets going through the trees above [him]" and remembered "wondering what it would feel like if [he] got shot." Appellant further stated that he "felt threatened by being shot at" and "was also threatened when [Guthrie] came at [him]." Similarly, Amy Lenoir testified that from their reaction, it seemed to her that Appellant and Foster were "fearful" as a result of the shots being fired and were "concerned about everyone's safety."

On the other hand, Appellant's statement also reveals that Appellant had consumed seven or eight beers over a five hour period. Yet there is no evidence as to the level of Appellant's intoxication or if he was, in fact, intoxicated. Flores testified that he was familiar with what alcohol does to a person's body and intellectual ability. As to a person's decision making skills, Flores testified that alcohol affects judgment and reason, as well as a person's ability to make good decisions about what he is doing. Flores concluded that in a hypothetical situation, where a person had consumed seven or eight beers over a five hour period, that person's judgment would have been impaired.

From our review of Flores's testimony, we do not interpret his statement that the amount of alcohol consumed in the aforementioned hypothetical, although it impaired judgment, necessarily would have impaired a person's judgment in a fashion wherein the person was no longer able to perceive risk. The remaining evidence indicates that Appellant was very familiar with firearms and the risks associated therewith. Inasmuch as Appellant had previously hunted, it follows that he was familiar with a gun's potential to cause injury or death. Finally, the record clearly indicates that Appellant pointed his gun at Guthrie, yet another indicator that Appellant was aware of a risk created by his conduct and disregarded such a risk. Accordingly, we hold that there is no evidence of record that would permit a rational jury to find that Appellant is guilty of criminally negligent homicide, but not guilty of manslaughter.[10] *See Salinas v. State*, 163 S.W.3d

---

[10] We reiterate that a charge on a lesser included offense should be given only when there is some evidence that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. *See Salinas*, 163 S.W.3d at 741. Proof of recklessness constitutes proof of criminal negligence, *see* TEX. PENAL CODE ANN. § 6.02(e), but such proof is no less proof of recklessness as well. As such, proof of recklessness does not support the submission of the lesser included offense of criminally negligent homicide by virtue of section 6.02(e) because proving criminal negligence by such means necessarily proves that the defendant is also guilty of

7

at 741. Appellant's sole issue is sustained.

## HARM ANALYSIS

Having determined that there was error in the charge, we must now decide if sufficient harm was caused by the error to require a reversal. *Castillo v. State*, 7 S.W.3d 253, 260 (Tex. App.–Austin 1999, pet. ref'd) (citing *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A jury charge error must be reviewed for harm under article 36.19 of the Texas Code of Criminal Procedure as interpreted by *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). As *Almanza* explains, article 36.19 separately contains standards for both fundamental error and ordinary reversible error. *See id.* at 171. Error properly preserved by an objection will require reversal "as long as the error is not harmless." *Id.* This has been interpreted to mean any harm regardless of degree. *See Hutch*, 922 S.W.2d at 171.

In the case at hand, charges on manslaughter and criminally negligent homicide were submitted to the jury. The jury found Appellant "not guilty" of manslaughter, but found him "guilty" of criminally negligent homicide. Thus, the jury acquitted Appellant of the only charge properly submitted to it and convicted him of a crime on which it should not have been given the opportunity to make a finding. The resulting harm is plain; but for the trial court's error, Appellant would not have been convicted of a crime.

The State cites *Saunders v. State*, 913 S.W.2d 564 (Tex. Crim. App. 1995), arguing that the error is harmless because had the criminally negligent homicide charge not been submitted, the jury was likely to have convicted Appellant of the greater offense of manslaughter inasmuch as it rejected his self defense argument in finding him "guilty" of criminally negligent homicide. In *Saunders*, however, the court of criminal appeals held that submission of the lesser included offense was harmless, but the appellant was convicted of the greater offense. *Id.* at 565. Thus, its facts are distinguishable from the case at hand where Appellant was acquitted of the greater offense.

Yet the court's analysis in *Saunders* necessitates that we further discuss the issue of harm. *See, e.g., id.* at 574. While we recognize that it is not outside the realm of speculation that the jury in the instant case may have reached a different decision had only the charge of manslaughter been submitted, we cannot ignore the fact that the jury was charged with and did acquit Appellant

---

the greater offense. *See Salinas*, 163 S.W.3d at 741.

of manslaughter. The inclusion or exclusion of a lesser included offense does not alter the jury's responsibilities with regard to its consideration of the greater offense, and we presume that the jury followed the instructions in the court's charge. *See Arnold v. State*, 766 S.W.2d 852, 855 (Tex. App.–Dallas 1989), *rev'd on other grounds*, 786 S.W.2d 295 (Tex. Crim. App. 1990) (appellate court generally presumes, although the presumption is rebuttable, that a jury follows the instructions given by the trial court).

Here, the jury was instructed that if it did not find from the evidence beyond a reasonable doubt that Appellant recklessly caused Guthrie's death by shooting him in the head, then it was to acquit the defendant of manslaughter and consider whether the defendant was guilty of criminally negligent homicide. The jury was further instructed as follows:

> You are limited in your deliberations upon a verdict to the consideration and discussion of such facts and circumstances only as were admitted in evidence, or as reasonably deductible from the evidence, and you cannot legally and must not consider nor discuss any fact or circumstance not thus in evidence or reasonably deductible from the evidence.

The record does not suggest that the jury acted contrary to any of the trial court's instructions. Indeed, the jury acquitted Appellant of manslaughter, but found him "guilty" of criminally negligent homicide. Therefore, we presume that the jury weighed the evidence and determined that it should acquit Appellant of manslaughter before it gave any consideration to whether Appellant was guilty of criminally negligent homicide.

In sum, the removal of the criminally negligent homicide charge from the jury's consideration does not change the evidence on which it based its verdict that Appellant is "not guilty" of manslaughter. Moreover, the record does not support that the jury acted in any way other than in accordance with the trial court's instructions that (1) it must acquit Appellant of manslaughter before it could consider the charge of criminally negligent homicide and (2) it was limited in its deliberations to the consideration and discussion of such facts and circumstances only as were admitted in evidence, or as reasonably deductible from the evidence and could not legally consider nor discuss any fact or circumstance not in evidence or reasonably deductible therefrom. Therefore, after reviewing the entirety of the record, we cannot conclude that the trial court's improper submission of the offense of criminally negligent homicide was harmless.

**DISPOSITION**

Having sustained Appellant's sole issue and determined the error committed harmed Appellant, we *reverse* the trial court's judgment and *remand* for *retrial* of the lesser included offense.[11]

                                                              JAMES T. WORTHEN
                                                              Chief Justice

Opinion delivered March 18, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[11] *See **Hampton***, 165 S.W.3d at 694 (holding that the appropriate remedy under similar circumstances is a retrial for the lesser included offense).