NO. 12-05-00263-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ANTHONY WASYLINA,
§
 APPEAL FROM THE THIRD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANDERSON COUNTY, TEXAS

 

OPINION ON REMAND


 Anthony Wasylina appeals his conviction for criminally negligent homicide, for which he
was sentenced to confinement for two years, probated for five years. On original submission, in one
issue, Appellant argued that the trial court improperly submitted in its charge the lesser included
offense of criminally negligent homicide. See Wasylina v. State, No. 12-05-00263-CR, 2007 WL
677778, at *1 (Tex. App.-Tyler Mar. 7, 2007) (op. on reh'g). We determined that there was no
evidence that Appellant was guilty of only criminally negligent homicide and sustained Appellant's
sole issue. Id., at *4. We further determined that such error caused Appellant harm and sought to
craft the appropriate remedy. Id., at *5-6. In so doing, we considered sua sponte the issue of legal
sufficiency (1) and concluded that a rational trier of fact could not have found beyond a reasonable
doubt that Appellant acted with criminal negligence. Id., at *6-7. Accordingly, we reversed the trial
court's judgment, and rendered a judgment of acquittal. Id., at *7. The State filed a petition for
discretionary review, which was granted. Concluding that proof of recklessness suffices to prove
criminal negligence, the court of criminal appeals reversed our judgment and remanded the cause
for our further consideration of Appellant's sole issue. See Wasylina v. State, No. PD-0519-07,
2009 WL 187831, at *2 (Tex. Crim. App. Jan. 28, 2009) (citing Tex. Penal Code Ann. § 6.02(e)). (2) 
We reverse and remand.


Background

 Appellant owns a cabin on property located in rural Anderson County, Texas. On August 1,
2003, Appellant, Bryan Lenoir, Lenoir's wife, Amy, and Michael Slater gathered at Appellant's
cabin to visit and ride four wheelers in the area near Appellant's cabin. (3) 

 At approximately 7:00 p.m., Lenoir, Amy, and Appellant rode four wheelers to a nearby boat
ramp on the Trinity River. There, they encountered a man in a pickup truck named James Guthrie. (4) 
Guthrie appeared very intoxicated and acted in an unusual manner. The group spoke with Guthrie
for about forty-five minutes before leaving to return to Appellant's cabin. 

 As the group rode the four wheelers back to Appellant's cabin, they noticed that Guthrie was
following them in his truck. Appellant stopped, and Guthrie pulled up beside him. Guthrie told
them (5) he was just making sure they lived where they had told him they lived. The group again set
out for Appellant's cabin. 

 When they arrived, Guthrie drove past them, but turned around and stopped his truck to talk
to Appellant's neighbor, Thomas Foster. After a few minutes, Appellant walked over to where
Guthrie and Foster were standing to find out what the problem was. Lenoir's wife, Amy, overheard
Guthrie tell Foster he thought the people in the group were poachers. During the discussion, Guthrie
made a pass at Amy and told her to "dump these losers and come smoke dope" with him. Soon
thereafter, the group told Guthrie that they were going to go riding on their four wheelers again, and
Guthrie left in his truck.

 Appellant, Lenoir, Amy, Foster, and Foster's son, Andrew, then congregated on the porch
at Appellant's cabin. Subsequently, Lenoir noticed a light coming down the road that he believed
to be a four wheeler. Next, the group heard gunshots being fired from an area near Foster's property. 
Appellant, who was armed with a .357 magnum handgun, and Foster went to investigate. As they
approached Foster's truck, Appellant saw a muzzle flash, heard two gunshots, and heard the shots
traveling through the trees above them. As the two drew closer to Foster's truck, Foster heard the
sound of metal scraping and yelled to a person he saw trying to hide behind the truck to get away
from it. Foster then heard another gunshot, saw a muzzle flash near his truck, and stated that it
seemed the shot went over his head. Appellant pointed his flashlight toward the shooter, and Guthrie
emerged from behind the truck. 

 Foster could see a gun in Guthrie's left hand, which Guthrie held down by his side. Guthrie
had a liquor bottle in his right hand. Lenoir, armed with a 30.30 rifle, came to where the men had
gathered. Guthrie put the gun in his pocket. Lenoir knocked the bottle out of Guthrie's right hand. 
Appellant, who now had his gun drawn, and Guthrie began to yell at one another. The two men were
about four to five feet apart. Foster later stated that everything was happening very quickly. 
Appellant told Guthrie to stay where he was because Appellant was going to call the sheriff. Guthrie
then lunged toward Appellant and pushed Appellant in the face causing Appellant to fall backwards. (6) 
As Appellant fell backwards, his handgun discharged a round, (7) which struck Guthrie in the forehead. 
Guthrie died from this wound. Appellant and Lenoir placed their firearms on the ground, and Foster
immediately called 9-1-1. 

 Appellant was charged with manslaughter and pleaded "not guilty." The matter proceeded
to jury trial. After the close of evidence, the trial court conducted a charge conference. During the
charge conference, Appellant objected to the submission of the lesser included offense of criminally
negligent homicide arguing that the issue of negligent conduct as opposed to intentional or reckless
conduct was not raised by the evidence. The trial court overruled Appellant's objection. Ultimately,
the jury found Appellant "not guilty" of manslaughter, but found Appellant guilty of criminally
negligent homicide. (8) The trial court sentenced Appellant to confinement for two years, but probated
Appellant's sentence and placed him on community supervision for five years. This appeal
followed.


Lesser Included Offense

 In his sole issue, Appellant argues that the trial court erred in submitting the lesser
included offense of criminally negligent homicide because the evidence does not support that he
acted with criminal negligence. 

Governing Law

 An offense is a lesser included offense if (1) it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged; (2) it differs from
the offense charged only in the respect that a less serious injury or risk of injury to the same
person, property, or public interest suffices to establish its commission; (3) it differs from the
offense charged only in the respect that a less culpable mental state suffices to establish its
commission; or (4) it consists of an attempt to commit the offense charged or an otherwise
included offense. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); see also Hall v. State,
225 S.W.3d 524, 527 (Tex. Crim. App. 2007). Furthermore, a charge on a lesser included offense
should be given only when there is some evidence that would permit a rational jury to find that
the defendant is guilty of the lesser offense but not guilty of the greater. See Salinas v. State, 163
S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex.
Crim. App. 1993). Appellant concedes that criminally negligent homicide is a lesser included
offense of manslaughter. See Stadt v. State, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005). Thus,
in our analysis, we will focus on whether there is any evidence of record that would permit a
rational jury to find that the defendant is guilty of criminally negligent homicide, but not
manslaughter.

 To support a conviction for criminally negligent homicide, the evidence must show that
the defendant caused the death of an individual by criminal negligence. See Tex. Penal Code
Ann. § 19.05(a) (Vernon 2003). A person acts with criminal negligence, or is criminally
negligent, with respect to circumstances surrounding his conduct or the result of his conduct when
he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the
result will occur. Tex. Penal Code Ann. § 6.03(d) (Vernon 2003). The elements of
manslaughter differ from criminally negligent homicide only as to the requisite mental state. 
Compare Tex. Penal Code Ann. § 19.04(a) (Vernon 2003) with Tex. Penal Code Ann.
§ 19.05(a). Manslaughter requires that the actor behave recklessly. See Tex. Penal Code Ann.
§ 19.04(a). A person acts recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously disregards a substantial
and unjustifiable risk that the circumstances exist or the result will occur. Tex. Penal Code
Ann. § 6.03(c) (Vernon 2003). Recklessness has been described as involving conscious risk
creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof. See
Stadt, 182 S.W.3d at 364. Criminal negligence has been described as involving inattentive risk
creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result
thereof, but fails to perceive the risk. Id.

Perception of Risk Associated with Firearms

 The court of criminal appeals' opinion in Thomas v. State, 699 S.W.2d 845 (Tex. Crim.
App. 1985) is instructive on the issue before us. In Thomas, there was conflicting testimony
concerning whether a shooting was accidental. Id. at 849. In its analysis, the court stated as
follows:


 Every case in which someone points a loaded gun at another does not require that a charge on
criminally negligent homicide be given. Nor does the allegation of accidental discharge necessarily
raise the issue. The attendant circumstances from which the defendant's mental state can be
inferred must be collectively examined in light of the definition of criminally negligent conduct
(citation omitted) . . . Other evidence raising the issue of whether or not a defendant was aware
of the risk must be presented before such a charge is required.


 Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their
potential for injury, and that he points a gun at another, indicates a person who is aware of a risk
created by that conduct and disregards the risk. 


 ....


 Accidental discharge alone does not raise the issue [of criminally negligent homicide]. 
Rather, every case must be examined in light of its particular facts and circumstances to determine
if the defendant was unaware of the risk his conduct created. 


Id. at 850. After noting that some evidence of record reflected that (1) the appellant was familiar
with the gun, (2) the appellant was unsure whether or not the gun was loaded, (3) the appellant
exhibited the gun and pointed it at the deceased with his finger on the trigger, (4) the appellant
knew it was possible to fire it and harm the deceased, and (5) the gun accidentally went off as the
appellant struggled with the deceased, the court held that the evidence may have entitled the
appellant to a charge on involuntary manslaughter, but did not raise criminally negligent
homicide. Id. at 852.

Appellant's Perception of Risk

 In the case at hand, there is some evidence to support that Appellant's shooting Guthrie
was accidental, i.e., the gun "went off." But as the court of criminal appeals held in Thomas,
accidental discharge alone does not raise the issue of criminally negligent homicide. See id. at
850. Thus, for us to conclude that the trial court properly included the offense of criminally
negligent homicide in the jury charge, there must be some evidence that Appellant was unaware
of the risk his conduct created. See id. Our perusal of the record does not reveal any evidence
that Appellant failed to perceive the risk of approaching the source of gunfire while armed himself
or pointing his gun at an armed man who was visibly intoxicated and in close proximity to him.

 To the contrary, the record reflects that Appellant was familiar with guns and had
previously fired the gun with which he was armed on the night in question. Furthermore, the
record reflects that Appellant loaded his own shells, (9) but does not indicate if Appellant in fact
knew that his gun was loaded on the night in question. When considering the type of handgun
Appellant owned and the length of the barrel in conjunction with the notion that the person who
owned such a gun loaded his own shells, Texas Ranger Rudy Flores testified that the weapon's
owner was likely an "avid shooter" and had "a good amount of knowledge of his firearm and his
equipment." The record further indicates that Appellant had hunted in the past. In his written
statement to police, Appellant stated that as they walked toward where the shots originated he
"could hear the bullets going through the trees above [him]" and remembered "wondering what
it would feel like if [he] got shot." Appellant further stated that he "felt threatened by being shot
at" and "was also threatened when [Guthrie] came at [him]." Similarly, Amy Lenoir testified that
from their reaction, it seemed to her that Appellant and Foster were "fearful" as a result of the
shots being fired and were "concerned about everyone's safety."

 On the other hand, Appellant's statement also reveals that Appellant had consumed seven
or eight beers over a five hour period. Yet there is no evidence as to the level of Appellant's
intoxication or if he was, in fact, intoxicated. Flores testified that he was familiar with what
alcohol does to a person's body and intellectual ability. As to a person's decision making skills,
Flores testified that alcohol affects judgment and reason, as well as a person's ability to make
good decisions about what he is doing. Flores concluded that in a hypothetical situation, where
a person had consumed seven or eight beers over a five hour period, that person's judgment would
have been impaired. 

 From our review of Flores's testimony, we do not interpret his statement that the amount
of alcohol consumed in the aforementioned hypothetical, although it impaired judgment,
necessarily would have impaired a person's judgment in a fashion wherein the person was no
longer able to perceive risk. The remaining evidence indicates that Appellant was very familiar
with firearms and the risks associated therewith. Inasmuch as Appellant had previously hunted,
it follows that he was familiar with a gun's potential to cause injury or death. Finally, the record
clearly indicates that Appellant pointed his gun at Guthrie, yet another indicator that Appellant
was aware of a risk created by his conduct and disregarded such a risk. Accordingly, we hold that
there is no evidence of record that would permit a rational jury to find that Appellant is guilty of
criminally negligent homicide, but not guilty of manslaughter. (10) See Salinas v. State, 163 S.W.3d
at 741. Appellant's sole issue is sustained.


Harm Analysis Having determined that there was error in the charge, we must now decide if sufficient
harm was caused by the error to require a reversal. Castillo v. State, 7 S.W.3d 253, 260 (Tex.
App.-Austin 1999, pet. ref'd) (citing Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App.
1996)). A jury charge error must be reviewed for harm under article 36.19 of the Texas Code of
Criminal Procedure as interpreted by Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984) (op. on reh'g). As Almanza explains, article 36.19 separately contains standards for both
fundamental error and ordinary reversible error. See id. at 171. Error properly preserved by an
objection will require reversal "as long as the error is not harmless." Id. This has been
interpreted to mean any harm regardless of degree. See Hutch, 922 S.W.2d at 171.

 In the case at hand, charges on manslaughter and criminally negligent homicide were
submitted to the jury. The jury found Appellant "not guilty" of manslaughter, but found him
"guilty" of criminally negligent homicide. Thus, the jury acquitted Appellant of the only charge
properly submitted to it and convicted him of a crime on which it should not have been given the
opportunity to make a finding. The resulting harm is plain; but for the trial court's error,
Appellant would not have been convicted of a crime. 

 The State cites Saunders v. State, 913 S.W.2d 564 (Tex. Crim. App. 1995), arguing that
the error is harmless because had the criminally negligent homicide charge not been submitted,
the jury was likely to have convicted Appellant of the greater offense of manslaughter inasmuch
as it rejected his self defense argument in finding him "guilty" of criminally negligent homicide. 
In Saunders, however, the court of criminal appeals held that submission of the lesser included
offense was harmless, but the appellant was convicted of the greater offense. Id. at 565. Thus,
its facts are distinguishable from the case at hand where Appellant was acquitted of the greater
offense. 

 Yet the court's analysis in Saunders necessitates that we further discuss the issue of harm. 
See, e.g., id. at 574. While we recognize that it is not outside the realm of speculation that the
jury in the instant case may have reached a different decision had only the charge of manslaughter
been submitted, we cannot ignore the fact that the jury was charged with and did acquit Appellant
of manslaughter. The inclusion or exclusion of a lesser included offense does not alter the jury's
responsibilities with regard to its consideration of the greater offense, and we presume that the
jury followed the instructions in the court's charge. See Arnold v. State, 766 S.W.2d 852, 855
(Tex. App.-Dallas 1989), rev'd on other grounds, 786 S.W.2d 295 (Tex. Crim. App. 1990)
(appellate court generally presumes, although the presumption is rebuttable, that a jury follows
the instructions given by the trial court). 

 Here, the jury was instructed that if it did not find from the evidence beyond a reasonable
doubt that Appellant recklessly caused Guthrie's death by shooting him in the head, then it was
to acquit the defendant of manslaughter and consider whether the defendant was guilty of
criminally negligent homicide. The jury was further instructed as follows:


 You are limited in your deliberations upon a verdict to the consideration and discussion
of such facts and circumstances only as were admitted in evidence, or as reasonably deductible
from the evidence, and you cannot legally and must not consider nor discuss any fact or
circumstance not thus in evidence or reasonably deductible from the evidence.


 The record does not suggest that the jury acted contrary to any of the trial court's
instructions. Indeed, the jury acquitted Appellant of manslaughter, but found him "guilty" of
criminally negligent homicide. Therefore, we presume that the jury weighed the evidence and
determined that it should acquit Appellant of manslaughter before it gave any consideration to
whether Appellant was guilty of criminally negligent homicide. 

 In sum, the removal of the criminally negligent homicide charge from the jury's
consideration does not change the evidence on which it based its verdict that Appellant is "not
guilty" of manslaughter. Moreover, the record does not support that the jury acted in any way
other than in accordance with the trial court's instructions that (1) it must acquit Appellant of
manslaughter before it could consider the charge of criminally negligent homicide and (2) it was
limited in its deliberations to the consideration and discussion of such facts and circumstances
only as were admitted in evidence, or as reasonably deductible from the evidence and could not
legally consider nor discuss any fact or circumstance not in evidence or reasonably deductible
therefrom. Therefore, after reviewing the entirety of the record, we cannot conclude that the trial
court's improper submission of the offense of criminally negligent homicide was harmless.


Disposition

 Having sustained Appellant's sole issue and determined the error committed harmed
Appellant, we reverse the trial court's judgment and remand for retrial of the lesser included
offense. (11)




 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered March 18, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.



















 

(PUBLISH)
1. See id., at *6 (citing Hampton v. State, 165 S.W.3d 691, 694 (Tex. Crim. App. 2005)).
2. The court expressed no opinion concerning whether the evidence was legally sufficient to show
manslaughter or its constituent culpable mental state of recklessness. See id., at *2 n.14. The court granted
discretionary review to determine whether the remedy we crafted was appropriate. Id. (Price, J. concurring). The
court did not grant discretionary review to examine our holding that the lesser included offense instruction was
submitted erroneously. Id. at n.4.
3. The record reflects that Appellant and Lenoir were drinking beer that day. Lenoir stated that the men had
consumed two or three beers at the most. In his statement to police, Appellant stated that he had consumed seven or
eight beers over a five hour time period.
4. The record reflects that Guthrie identified himself only by his first name.
5. Amy Lenoir was riding on the back of Appellant's four wheeler.
6. Although he fell backwards, Appellant did not fall to the ground.
7. There is contradicting evidence in the record on this point. In his written statement to police, Appellant
stated that his gun "went off." However, during Appellant's cross examination of Investigator Chuck Franklin
concerning a taped statement Appellant gave on the night in question, Franklin testified that Appellant said on the
tape he "shot" Guthrie. Franklin further testified that based on his investigation, he felt that Appellant "intentionally
fired his gun."
8. The jury was given a self defense instruction in the court's charge.
9. The record reflects that Appellant's .357 magnum handgun was loaded with "light loads," that is one half
the powder of an ordinary commercially produced round. Such a load, according to the evidence, might typically
be used in target shooting.
10. We reiterate that a charge on a lesser included offense should be given only when there is some evidence
that would permit a rational jury to find that the defendant is guilty of the lesser offense but not guilty of the greater. 
See Salinas, 163 S.W.3d at 741. Proof of recklessness constitutes proof of criminal negligence, see Tex. Penal
Code Ann. § 6.02(e), but such proof is no less proof of recklessness as well. As such, proof of recklessness does
not support the submission of the lesser included offense of criminally negligent homicide by virtue of section
6.02(e) because proving criminal negligence by such means necessarily proves that the defendant is also guilty of
the greater offense. See Salinas, 163 S.W.3d at 741. 
11. See Hampton, 165 S.W.3d at 694 (holding that the appropriate remedy under similar circumstances is a
retrial for the lesser included offense).