

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 02-11-00008-CR
### 02-11-00009-CR

AIKEM JHIMAY HILL                                             APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In a single point, Appellant Aikem Jhimay Hill complains that he received ineffective assistance of counsel.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

The State charged Hill with two separate cases of burglary of a habitation. In exchange for pleading guilty to these charges, Hill received seven years' deferred adjudication community supervision and a $700 fine in each case. Around nine months later, the State filed petitions to proceed to adjudication in each case, alleging that Hill had violated his community supervision's terms and conditions.

At the hearing on the State's petitions to proceed to adjudication, Hill pleaded "not true" to the State's allegations that he committed a new offense by intentionally or knowingly causing bodily injury to a child and that he failed to pay his supervision or crime stoppers fees.

With regard to the injury-to-a-child allegation, Maricelo Vara, a Tarrant County Public Health Department employee, testified that on August 10, 2010, she saw Hill grab a two- or three-year-old child by the arm, yank the child up, and take a swing at the child, hitting the child in the chest with his closed fist while he and the child were in the waiting room. Vara said that the first time Hill grabbed the child, he told him to sit still; the second time—when he struck the child—"he told him to shut the 'F' up." The child began crying loudly. Vara went to her supervisor and told her what she had seen. Her supervisor instructed her to call the constable.

Tarrant County Sheriff's Office Deputy Tiffany Lewis was dispatched to the county health department and asked Hill what had happened. Hill told Deputy

Lewis that the child, David (a pseudonym), had knocked over some water and that he had tried to get David to sit down and be quiet; Hill claimed that he had not physically touched David since spanking him "on his butt" in the car in the parking lot. Deputy Lewis spoke with Latrena Cortez, David's mother, who told Deputy Lewis that she did not see the incident.

Cortez gave Deputy Lewis permission to see David. When Cortez lifted David's shirt, Deputy Lewis said that David flinched, made a protective motion over his abdomen, and began to cry. Deputy Lewis did not see any visible signs of injury to David, but he had a port on his lower abdomen with a plug on it— Cortez told her that he had had the G-port since his birth and that it was a feeding tube that he no longer needed. Cortez told Deputy Lewis that she did not think Hill had done anything wrong because she had given him permission to hit David on his arms.

Deputy Lewis also testified without objection about speaking with two other witnesses, Mr. and Mrs. Slanka, who informed her that they were sitting across from Hill in the waiting room. Deputy Lewis testified that Mr. Slanka told her that he saw Hill "strike the child in the stomach area leading to the incident where the water was wasted, and he saw [Hill] physically grab the child and push him down into the chair where he was seated next to him."

Contrary to Deputy Lewis's testimony, Cortez said that she saw the incident and that Vara could not have because Cortez was standing in front of her. Cortez said that David had been pouring water from his water bottle onto

3

the floor and that she asked Hill to snatch the bottle out of David's hands. Cortez said that Hill had just been trying to calm David, who had been fussy. She did not see Hill hit David. Later, she took David to Cook Children's hospital for x-rays, but the hospital staff did not find any broken bones and told her that David was fine. Cortez said that she had given Hill permission to discipline David; she acknowledged that she had signed an affidavit of nonprosecution the day before the hearing and that she was pregnant with Hill's child.

Hill testified that he did not cause bodily injury to David, that he did not hit David with his fist, that Vara had just seen him snatch the water bottle out of David's hands, that the Slankas had been mistaken about seeing him strike David, and that Cortez had given him permission to discipline David. Hill also said, "Everything that those people said was true up until the strike," and he claimed that the incident had not been investigated properly. He also said that he did not have the money to pay his community supervision fees.

After hearing the evidence, the trial court found the injury-to-a-child allegation true; it adjudicated Hill guilty in both burglary cases and sentenced him to ten years' confinement in each case, to be served concurrently. This appeal followed.

### III. Ineffective Assistance of Counsel

In his single point, Hill complains that he was denied effective assistance of counsel because his trial counsel failed to make a Confrontation Clause objection to Deputy Lewis's recitation of the Slankas' testimonial, out-of-court statements.

4

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

The record is devoid of evidence regarding counsel's reasons or strategy for not objecting, and Hill did not file a motion for new trial. Therefore, no record has been developed regarding why counsel did not object, and we are unable to determine counsel's reasons for his actions or intentions. Because counsel's action could have been part of a reasonable trial strategy, without more, we must defer to counsel's decisions and deny relief. *See Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007) (overruling appellant's complaint that trial counsel's failure to object to hearsay testimony that violated the Confrontation Clause was ineffective assistance when counsel's reason for failing to object did not appear in the record and his conduct could have been part of a reasonable trial strategy). Further, notwithstanding Deputy Lewis's testimony about the Slankas, the trial court also heard Vara's account that she saw Hill strike David and Deputy Lewis's account of her examination of David and his reaction, as well as Cortez's and Hill's versions of the events in the waiting room. Because the

5

evidentiary standard here is preponderance of the evidence, we cannot say that there is a reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). We overrule Hill's sole point.

## IV. Conclusion

Having overruled Hill's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 17, 2011