

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00064-CV

IN THE INTEREST OF M.P. AND
J.P., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

In four issues, appellant Mother appeals termination of her parental rights to Mike and Jessy.[2]  Mother complains that the trial court erred by allowing certain jury questions to be presented to the jury in the jury charge and that she received ineffective assistance of counsel.  We will affirm.

-----

[1]*See* Tex. R. App. P. 47.4.

[2] We use aliases to refer to the children involved in this case and "Mother" to refer to their biological parent.  *See* Tex. R. App. P. 9.8(b)(2).

## II. BACKGROUND

The Texas Department of Family and Protective Services (Department) filed a petition for protection of children, for conservatorship, and for parental-right termination in a suit affecting the parent-child relationship on November 8, 2007. The Department placed the children, Mike and Jessy, in foster care; and the trial court ordered that the Department act as temporary managing conservator of both children. At that time, the Department alleged that Mother was unable to accept parental responsibility for Mike and Jessy and that Mother failed to provide a suitable home environment for both children. Mother also requested that the children be placed in foster care.

The Department brought its termination case to trial in September 2008. On February 23, 2009, the trial court found that Mother had knowingly placed the children or knowingly allowed them to remain in conditions or surroundings which endangered their physical or emotional well-being and that Mother had engaged in conduct or knowingly placed Mike and Jessy with persons who engaged in conduct which endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(D), (E) (Vernon Supp. 2010). But the trial court further found that termination of Mother's parental rights to Mike and Jessy was not in the best interests of the children. The trial court ordered that Mother work a service plan before Mike and Jessy could be returned to her.

On June 19, 2009, the Foster Parent filed an original petition to terminate Mother's parental rights to Mike and Jessy. The Foster Parent alleged that the trial court had previously found that Mother had endangered Mike and Jessy, that the circumstances had materially and substantially changed since the February 23, 2009 findings, and that termination was now in the best interests of Mike and Jessy. The Foster Parent also alleged that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for Mike and Jessy to be returned to Mother. *See id.* at § 161.004 (Vernon 2008).

On February 8, 2010, the trial court signed an order of termination. The trial court's order was based on a jury's findings that the trial court had previously found that Mother had endangered Mike and Jessy; that the circumstances of the children, Mother, the Department, or the Foster Parent had materially and substantially changed since February 23, 2009; and that Mother had failed to comply with the previous court-ordered service plan. The jury also found that termination of Mother's parental rights to Mike and Jessy was now in the children's best interests and that appointment of the Foster Parent as Mike and Jessy's possessory conservator was in their best interests. This appeal followed.

## III. DISCUSSION

### A. Jury Charge Issues

In her first, second, and third issues, Mother complains that the trial court erred by allowing certain questions to be submitted to the jury in the jury charge.

3

First, Mother complains that the trial court erred by allowing jury question number one, based on Texas Family Code 161.004—the statute requiring material and substantial change—to be submitted to the jury. *See id.* Mother claims that section 161.004 is unconstitutional because, according to Mother, "[i]t is inconceivable and contrary to all constitutional protections that a statute would allow the termination of parental rights based on the changed circumstances of a foster parent or a governmental agency." Second, Mother complains that the trial court erred by submitting a jury question that "presented to the jury . . . that the grounds for termination had already been decided by the trial court and [the jury's] sole responsibility was deciding best interest." Finally, Mother argues that the trial court erred by allowing what Mother alleges was a waived issue to be presented as a jury question.[3] We conclude that Mother failed to preserve each of these issues for our review.

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Tex. R. Civ. P. 274. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. *Id.; see*

---

[3]Mother argues that because the appellees only discussed the best interest prong under Texas Family Code 161.001 during voir dire and did not discuss or question the jury panel regarding Texas Family Code 161.004, appellees somehow waived or abandoned the issue. Mother cites no authority for her position that not addressing an issue in voir dire is tantamount to abandonment of a claim. Even though we do not address the merits of this issue, this court notes that the issue was pleaded, litigated by counsel for all sides, and submitted to the jury in the jury charge.

4

*also* Tex. R. App. P. 33.1(a). Moreover, the constitutional dimension of the parent-child relationship does not automatically override the procedural requirements for error preservation. *In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003) (stating that except for fundamental error, appellate courts are not authorized to consider issues—even constitutional error—not properly raised by the parties and declining to apply the criminal fundamental-error doctrine in parental rights termination cases when complaint involves unpreserved alleged jury charge error), *cert. denied*, 541 U.S. 945 (2004). With only a few recognized exceptions, even constitutional complaints are waived if not properly preserved. *See id.* at 350–51. The Texas Supreme Court has continually explained that the rules governing error preservation must be followed in cases involving termination of parental rights as in other cases in which a complaint is based on constitutional error. *Id.*; *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex.), *cert. denied*, 546 U.S. 961 (2005).

Mother admits, and the record demonstrates, that she did not complain to the trial court about these alleged jury-charge errors. Because Mother did not object to the submission of these questions to the jury, these complaints have not been preserved for our review. *Id.* Thus, we overrule Mother's first, second, and third issues.

## B. Effective Assistance of Counsel

In her fourth issue, Mother argues that her trial counsel was ineffective because her trial counsel stipulated to the trial court's prior family code 161.001(D) and (E) findings; her trial counsel allowed the best-interest finding to be "bifurcated by the [trial c]ourt" from the (D) and (E) findings; and her trial counsel did not object to the jury charge to preserve her issues one, two, and three for appellate review. We disagree that Mother's trial counsel was ineffective.

There is a right to effective assistance of counsel in termination cases. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). We review ineffective assistance claims under the *Strickland* standard. *Id.* at 549. To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that her counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.

*Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068.

In many cases, we are unable to determine whether counsel's actions were grounded in sound trial strategy because the record is silent as to possible trial strategies. In this case, however, the record unequivocally demonstrates that counsel's trial strategy was to convince the jury that it was not in Mike's and

7

Jessy's best interests to have their parent-child relationship with Mother terminated. Counsel's strategy thus entailed challenging an essential element of the termination proceeding.[4] It is further clear from the record that trial counsel strategically introduced evidence that since the February 23, 2009 order establishing the actions necessary for Mother to obtain the return of Mike and Jessy, Mother had made some progress on her service plan; found suitable housing; entered into a stable relationship; planned to get married; stopped using controlled substances; quit dancing at a men's club; and had been caring for her youngest child, who is not subject to this suit.

Considering that the trial court had previously found by clear and convincing evidence that Mother had both endangered and left Mike and Jessy in endangering surroundings, counsel could have reasonably concluded that it would have been disingenuous to contest the section 161.001(1)(D) and (E) grounds—the jury was still required to find by clear and convincing evidence that termination was in Mike's and Jessy's best interests. *See* Tex. Fam. Code Ann. § 161.001(2). Further, trial counsel repeatedly contested that Mother had failed to follow the trial court's order which, if followed, would have allowed Mike and Jessy to be returned to her. Mother has failed to rebut the strong presumption

---

[4]In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute *and* must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

8

that counsel's conduct fell within the wide range of reasonable representation. Consequently, Mother has failed to meet her burden under the first *Strickland* prong. *See Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. We overrule Mother's fourth issue.

## IV. CONCLUSION

Having overruled each of Mother's four issues, we affirm the trial court's order.


BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  December 23, 2010