02-09-297-CR REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00297-CR

 

 


 
 
 Kenyon Grady Cox
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

FROM Criminal
District Court No. 2 OF Tarrant COUNTY

------------

MEMORANDUM OPINION[1] ON

STATE’S MOTION FOR
REHEARING

------------

After
considering the State’s motion for rehearing, we deny the motion, but we
withdraw our opinion and judgment of March 31, 2011 and substitute the
following.

A
jury convicted Appellant Kenyon Grady Cox of two counts of aggravated sexual
assault of a child and two counts of indecency with a child by contact and
assessed his punishment at life imprisonment and a $10,000 fine on each count. 
The trial court sentenced him accordingly, ordering the sentences to be served
consecutively.  In eight points, Appellant contends that the trial court abused
its discretion by stacking the sentences and that he received ineffective
assistance of counsel at trial.  We hold that defense counsel rendered
ineffective assistance at trial by misstating the application of the stacking
law to the venire panel and by not ensuring that such misstatement was
corrected before the jury delivered its punishment verdict, but we also hold
that the trial court did not reversibly err and that Appellant has not proved
his remaining claims of ineffective assistance.  We therefore affirm the trial
court’s judgment as to Appellant’s convictions but reverse the trial court’s
judgment as to punishment and remand this case for a new trial on punishment only.

I.  Trial Court Did
Not Abuse Discretion by Stacking Sentences

In
his first point, Appellant contends that the trial court abused its discretion
by stacking the sentences.  Section 3.03 of the penal code provides that the trial
court has discretion to stack sentences in cases involving aggravated sexual
assault of a child and indecency with a child.[2]  The trial court’s
decision to stack the sentences in this case is therefore “a normative, discretionary
function that does not turn on discrete findings of fact”[3]
and is “unassailable on appeal.”[4]  We consequently hold
that the trial court did not abuse its discretion by stacking the four
sentences and overrule Appellant’s first point.

II.  Ineffective
Assistance of Counsel at Trial

In
his remaining points, Appellant contends that he received ineffective
assistance of counsel at trial.

A. 
Standard of Review

To
establish ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.[5]

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.[6]  The issue is
whether counsel’s assistance was reasonable under all the circumstances and
prevailing professional norms at the time of the alleged error.[7]  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.[8] 
A reviewing court will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim.[9]  “In the majority of cases,
the record on direct appeal is undeveloped and cannot adequately reflect the
motives behind trial counsel’s actions.”[10] 
To overcome the presumption of reasonable professional assistance, “any
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.”[11]  It is not
appropriate for an appellate court to simply infer ineffective assistance based
upon unclear portions of the record.[12]

The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, that is, a trial
with a reliable result.[13] 
In other words, appellant must show there is a reasonable probability that, but
for counsel’s unprofessional errors, the result of the proceeding would have
been different.[14] 
A reasonable probability is a probability sufficient to undermine confidence in
the outcome.[15] 
The ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding in which the result is being challenged.[16]

B.  No
Ineffective Assistance by Failing to File Motion to Sever

In
his fourth and fifth points, Appellant contends that his trial counsel rendered
ineffective assistance by not filing a motion to sever.  As Appellant admits,
section 3.04(c) of the penal code provides,

The right to severance
under this section does not apply to a prosecution for offenses described by
Section 3.03(b) unless the court determines that the defendant or the state
would be unfairly prejudiced by a joinder of offenses, in which event the judge
may order the offenses to be tried separately or may order other relief as
justice requires.[17]

Section
3.03(b)(2) applies to certain sexual offenses against complainants younger than
seventeen years old, such as the offenses in this case.[18]

Appellant
does not explain how trial counsel’s filing of a motion to sever could have
possibly changed the outcome of his trial and gives no evidence of unfair
prejudice based on the joinder of the four offenses.  Accordingly, he has
failed to prove ineffective assistance of counsel in this regard.  We therefore
overrule his fourth and fifth points.

C.  No Ineffective Assistance Regarding
Extraneous Offenses

In
his sixth, seventh, and eighth points, Appellant complains that his trial
counsel rendered ineffective assistance by not objecting to the admission of
evidence about extraneous offenses, not making a running objection thereto, and
not timely requesting a limiting instruction.  In her opening statement,
defense counsel stated,

[F.S.] is going to talk about her mother . . . .  And
that there were not just one, but on multiple occasions, had there been some
type of questioning of these children.  And then on multiple times there was
not any allegations substantiated.

But if you tell a child something
enough and you tell a child this is what you want to hear enough, perhaps you
might get the answer you want. . . .  And is this a case of, well, if we ask
you enough times, perhaps we’re going to get the right answer.

The
following voir dire examination of Appellant by defense counsel occurred after
opening statements but before the State called its first witness:

Q.      Mr. Cox, you are Kenyon Grady Cox,
correct?

A.      Yes.

Q.      And you are the person who is
today accused in Cause No. 1168562 of various counts of aggravated sexual
assault, indecency, fondling and indecent exposure, correct?

A.      Yes.

Q.      And for much time now you have
indicated your innocence and that you wish to pursue a trial with regard to
these allegations, correct?

A.      Yes.

Q.      And you have indicated to me
you would never accept a plea because you felt you did not commit this offense,
correct?

A.      Yes.

Q.      Okay.  And part of preparation
for trial you and I have discussed on multiple occasions that previous to the
June 7th referral to CPS, with regard to the children and the neglectful
supervision, there had been four other referrals between yourself and Ms. [F.S.]
with regard to your treatment of the children, correct?

A.      Yes.

Q.      And I have indicated to you
that in this trial the only pertinent issue would be that June 7th of ‘07
referral.  You remember we discussed that?

A.      That—

Q.      Because that’s the one that
brought everything out was the June 2007?

A.      When they took the kids?

Q.      Yes.  The one we talked about
the one?

A.      Yeah.

Q.      —that you heard [the prosecutor] talk
about on her—

A.      Yeah.

Q.      —on her opening statement?

A.      Yeah.

Q.      But you feel that it would be
in your best interest if these other four referrals; June 7th of ‘07—I’m
sorry.  February 7th of ‘07, February 13th of ‘07, February 3rd of ‘06, and
August 9th of ‘06, if the jury also heard about those referrals—

A.      Yeah.

Q.      —and the outcome of those referrals?

A.      Yes.

Q.      And I have discussed with you
that if we go ahead—anything we discuss with any of the witnesses and if we
open the door to these other referrals, then that would also give [the
prosecutors] the opportunity to question these same witnesses regarding these
other referrals?

A.      Yes.

Q.      And you feel now it’s your
trial strategy and it’s your trial, despite my recommendations, that you want
to go into these other CPS referrals?

A.      Yes.

Q.      And you feel it would be in
your interest, it’s your trial, that you want the jury to hear about all these
other referrals?

A.      Yes.

Q.      And that is what you’re asking
me to do right now at this stage, when we begin talking to witnesses and they
come on the stand that you ask that I also refer to these other CPS
investigations?

A.      Yeah.

[PROSECUTOR]:  Your Honor, just
briefly for the record, I have not discussed this with Defense counsel, these
children were interviewed on previous instances, mostly with reference to
physical abuse, but were also asked about sexual abuse.  It is the State’s
position that if Defense counsel goes into that, that it is then the State’s
right to show why these children were reluctant to come forward.  And that
would include numerous acts of physical abuse that were either committed upon
these children or that were committed in their presence by this Defendant against
them and their mother, as well as the fact that this Defendant beat their puppy
to death with a bat in front of them.  And just for purposes of the record, it
is our intention and I think, frankly, I think opening statement probably
opened the door to it, that we intend to go into those things in light of Defense’s
strategy of handling the case in this manner.

[DEFENSE COUNSEL]:  And, Your Honor, I
have discussed that with my client and he feels, as we just discussed, he and I
have discussed that and we discussed that if—it would be your decision on how much,
if anything, of these extraneous acts the prosecution is allowed to go into—or
these alleged extraneous acts.

THE COURT:  Well, I don’t think I’m going
to be able to limit it as far as if the door is open and y’all start get[ting]
into extraneous acts, it’s all going to come in.  It’s as simple as that.  I mean,
I can’t limit a portion of this.  And I think that if you start trying to get
into with the children about other incidents then, of course, the State has [a]
right to expand on why they had these other incidents, which could include the
physical abuse, as well as—even as far as the incident with the puppy.  I mean,
that’s—those are bad acts and it’s going to come in.

[DEFENSE COUNSEL]:  And do you
understand—Mr. Cox, do you understand what the Judge’s ruling is in that
regard?

[A.]    That’s fine.

[Q.]    And it’s still your desire
that we discuss those?

[A.]    Yeah.

THE COURT:  All right.

[PROSECUTOR]:  And, Your Honor, since
the door was opened in opening statements, it is my intent to go into those
things on direct examination with the child, who will be the State’s first
witness.

[DEFENSE COUNSEL]:  And, Your Honor,
the only reason I did that was because we didn’t have an opportunity to—

THE COURT:  Right.

[DEFENSE COUNSEL]:  —discuss with you outside
of the presence of the jury, as I requested prior to the openings—

THE COURT:  All right.

[DEFENSE COUNSEL]:  —with regards to
all these instances.

THE COURT:  Okay.  Real good.

(A brief pause in proceedings.)

[PROSECUTOR]:  Are we on the record?  Okay. 
Your Honor, at the end of our previous discussion with Defense counsel, she
made mention of the fact that we did not take these issues up prior to her
having made her opening statement.  However, it’s my understanding that
regardless of her having made her opening statement, even if she were able to rescind
those statements, it is still their intent to go into the prior denials of
abuse by the children, thus opening the door to allow us to go into the prior acts
of violence witnessed by the children by this Defendant.

[DEFENSE COUNSEL]:  And—and Mr. Cox
and I have been discussing this for several days now, Judge.  So I believe it
was Mr. Cox’s position all along that yes, we do go into these prior CPS
referrals.

THE COURT:  Okay.  All right.  Then
the door will be open.  All right.  . . . 

It
is clear from Appellant’s testimony outside the jury’s presence that he
knowingly insisted against the advice of counsel on the strategy of delving
into multiple CPS complaints occurring before the one involving the outcry, the
admission of which opened the door to a multitude of extraneous offenses,
including conduct amounting to domestic violence, child abuse, and aggravated
assault with a deadly weapon, as well as the brutal killing of the family dog. 
Further, even though counsel did not timely request a limiting instruction, a
limiting instruction appears in the jury charge.  Additionally, Appellant has
not shown that but for the admission of this evidence, there is a reasonable
probability that the outcome of his trial would be different.  Consequently, we
cannot say that Appellant has proven ineffective assistance of counsel on these
grounds.  We therefore overrule his sixth, seventh, and eighth points.

D.  Ineffective Assistance by Not Ensuring
that Jury Received Correct Law on Stacking Before Delivering Punishment Verdict

In
his second and third points, Appellant contends that his trial counsel rendered
ineffective assistance of counsel by failing to understand the law on stacking
and misstating the law on stacking to the venire panel.  Within his discussion,
he also contends that his trial counsel rendered ineffective assistance of
counsel by not assuring that the jury had the correct law when deliberating. 
We agree.

In Andrews
v. State, the Texas Court of Criminal Appeals concluded that “there could
be no legitimate trial strategy in failing to object to the prosecutor’s
misstatement” in the State’s closing argument regarding the stacking law,
especially when Andrews’s defense counsel knew that the State had filed a
motion to cumulate the sentences.[19]  The court also noted
that “[h]ad defense counsel objected on the basis that the prosecutor’s
argument was a misstatement of the law, the trial court could have corrected
the misstatement and told the jury not to consider whether the court could or
would cumulate the sentences.”[20]  The Texas Court of
Criminal Appeals explained,

[W]e have said that
the record on direct appeal is in almost all cases inadequate to show that
counsel’s conduct fell below an objectively reasonable standard of performance
and that the better course is to pursue the claim in habeas proceedings.  But, when no reasonable
trial strategy could justify the trial counsel’s conduct, counsel’s performance
falls below an objective standard of reasonableness as a matter of law,
regardless of whether the record adequately reflects the trial counsel’s
subjective reasons for acting as she did.[21]

The
Texas Court of Criminal Appeals reminded us that Strickland not only
requires that our review be “highly deferential”; it also requires that
reviewing courts “keep in mind that counsel’s function, as elaborated in
prevailing professional norms, is to make the adversarial testing process
work.”[22]  The Texas Court of
Criminal Appeals concluded,

Defense counsel has a
duty to correct misstatements of law that are detrimental to his client.  This
duty derives from counsel’s function to make the adversarial testing process
work . . . .  There can be no reasonable trial strategy in failing to correct a
misstatement of law that is detrimental to the client.[23]

On
the second Strickland prong, the Texas Court of Criminal Appeals
concluded that “[b]ecause the jury received incorrect information about
[Andrews’s] punishment, the record supports the conclusion that there is a
reasonable probability that the result would have been different.”[24]

Here,
the following discussion took place during voir dire:

VENIREPERSON:  I just had a question.  I
don’t know if I missed what he was saying, but there’s going to be three
charges that we’re going to judge innocent or guilt, and as far as the
punishment phase, does that mean they’re separate or do they run concurrent if
we do so find him guilty?

[DEFENSE COUNSEL]:  And in this case
they would run concurrent.

[PROSECUTOR]:  They’ll get a charge on
that.

[DEFENSE COUNSEL]:  And so you would
also get a—a legal charge.  Again, that’s a legal question, with a legal
answer, which you will get from the Judge, who will tell you, okay, now we have
found someone guilty—because again, there may be multiple things and you may
say, Okay, we find him—we think he’s guilty of this one and not this one or we
think you’re guilty of this—this middle one.  So once that decision is made—

VENIREPERSON:  Okay.

[DEFENSE COUNSEL]:—then you move on to
your second decision.

VENIREPERSON:  Okay.

[DEFENSE COUNSEL]:  And I promise you
you will get lots and lots of pages about the law and how that all works.

VENIREPERSON:  Okay.

[DEFENSE COUNSEL]:  So—and I sound murky,
but I don’t want to go too much into that.

Because
the legislature has given the trial court discretion to stack (or not stack)
sentences in cases involving aggravated sexual assault of a child and indecency
with a child,[25] defense counsel’s
statement that the sentences would run concurrently was a misstatement of law. 
But the prosecutor’s statement that the jury would “get a charge on that” was
likewise a misstatement of law, and defense counsel magnified both misstatements
of law by agreeing with the prosecutor that the jury would be charged on “how
that all works.”  Had defense counsel instead objected to the prosecutor’s
incorrect statement of law during voir dire, “the trial court could have
corrected the misstatement and told the jury not to consider whether the court
could or would cumulate the sentences.”[26]

The
State filed its motion to stack on the same day that the jury received the
punishment charge.  After the jury began deliberations, the foreman sent a note
to the trial judge.  The note stated, “The jury is interested in knowing how
the law applies to . . . whether any of the sentences in
this case run concurrently or consecutively.”  The following occurred after the
trial court received the note:

(Jury deliberating.)

(Open court, Defendant present.)

COURT REPORTER:  The note reads:  In
answer to your jury note number three, the Court cannot answer your question.  Please
refer to charge of the Court and continue your deliberations.

[PROSECUTOR]:  Okay.

[DEFENSE COUNSEL]:  Okay.

Here,
too, defense counsel could have cured his mistakes by requesting that the trial
court clarify for the jury that it should not “consider whether the court could
or would cumulate the sentences.”[27] 
Instead, he said, “Okay.”

Following
Andrews, we hold that defense counsel rendered ineffective assistance at
trial by misstating the law to the venire panel, agreeing with the prosecutor’s
misstatement of the law instead of challenging it, and not ensuring that the
jury had the correct information on stacking before it delivered the punishment
verdict.  We therefore sustain Appellant’s second and third points.

III. 
Conclusion

Because
we have sustained Appellant’s second and third points but have overruled his
remaining six points, we affirm the trial court’s judgment as to Appellant’s
convictions, reverse the judgment as to his punishment, and remand this case to
the trial court for a new trial on punishment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 17,
2011









[1]See Tex. R.
App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 3.03(b)(2)(A) (West 2011); see also id. §§ 21.11,
22.021(a)(1), (2)(B).





[3]Barrow v. State,
207 S.W.3d 377, 380 (Tex. Crim. App. 2006).





[4]Id. at 381; see
also Beedy v. State, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008).





[5]Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770
(Tex. Crim. App. 1999).





[6]Thompson, 9 S.W.3d
at 813.





[7]See Strickland, 466
U.S. at 688–89, 104 S. Ct. at 2065.





[8]Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.





[9]Salinas, 163 S.W.3d
at 740; Thompson, 9 S.W.3d at 813–14.





[10]Salinas, 163
S.W.3d at 740 (quoting Mallett, 65 S.W.3d at 63).





[11]Id. (quoting Thompson,
9 S.W.3d at 813).





[12]Mata v. State, 226
S.W.3d 425, 432 (Tex. Crim. App. 2007).





[13]Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.





[14]Id. at 694, 104 S.
Ct. at 2068.





[15]Id.





[16]Id. at 697, 104 S.
Ct. at 2070.





[17]Tex. Penal Code Ann. § 3.04(c)
(West 2011).





[18]Id. § 3.03(b)(2).





[19]159 S.W.3d 98, 100, 103
(Tex. Crim. App. 2005).





[20]Id.; see also Tex.
Penal Code Ann. § 3.03(b)(2)(A).





[21]Id. at 102
(citations omitted).





[22]Id.





[23]Id. (citations and
internal quotation marks omitted).





[24]Id. at 103.





[25]See Tex. Penal Code
Ann. § 3.03(b)(2)(A).





[26]Andrews, 159
S.W.3d at 103; see also Tex. Penal Code Ann. § 3.03(b)(2)(A).





[27]Andrews, 159
S.W.3d at 103; see also Tex. Penal Code Ann. § 3.03(b)(2)(A).