

**NUMBER 13-12-00646-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE MATTER OF X.T.S.W., A JUVENILE

**On appeal from the 89th District Court
of Wichita County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Justice Garza**

Appellant, X.T.S.W., a juvenile, was found to have engaged in delinquent conduct[1] and was sentenced to twelve months' community supervision. *See* TEX. FAM. CODE ANN. § 51.03(a)(1) (West Supp. 2011). An agreed modified order was later rendered extending the term of community supervision to twenty-four months. On

---

[1] Specifically, X.T.S.W. was found to have committed the criminal offenses of: assault on a public servant, a third-degree felony, *see* TEX. PENAL CODE ANN. § 22.01(b)(1) (West 2011); resisting arrest, a class A misdemeanor, *see id.* § 38.03(a) (West 2011); and criminal mischief causing loss of between $50 and $500, a class B misdemeanor. *See id.* § 28.03 (West 2011).

September 26, 2012, the trial court found that X.T.S.W. violated the terms of his community supervision[2] and ordered him committed to the Texas Juvenile Justice Department. *See id.* § 54.05(f) (West Supp. 2011). On appeal,[3] X.T.S.W. contends that his counsel at the disposition hearing was ineffective "in that he failed to call [X.T.S.W.]'s psychiatrist or obtain an expert witness to testify about [X.T.S.W.]'s mental illness and the effect that newly prescribed medication would have on his behavior."[4] We affirm.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *see In re F.L.R.*, 293 S.W.3d 278, 280 (Tex. App.—Waco 2009, no pet.) (noting that "[a] juvenile has a right to effective assistance of counsel in an adjudication proceeding"). Review of counsel's representation is highly deferential, and we indulge a "strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d

---

[2] Specifically, the trial court found as true the State's allegations that X.T.S.W. (1) violated his curfew, and (2) tampered with an electronic ankle monitor.

[3] This appeal was transferred from the Second Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[4] The State has not filed a brief to assist us in the resolution of this matter.

591, 592–93 (Tex. Crim. App. 2012). This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Id.* at 593. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740.

> The Juvenile Justice Code provides, in relevant part, that:

> a disposition based on a finding that the child engaged in delinquent conduct that violates a penal law of this state or the United States of the grade of felony may be modified so as to commit the child to the Texas Youth Commission[5] if the court after a hearing to modify disposition finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court.

TEX. FAM. CODE ANN. § 54.04(f).

## II. ANALYSIS

X.T.S.W.'s grandmother, his guardian, testified at the disposition hearing that X.T.S.W. "started acting out" while in the fourth grade and began seeing a therapist. When he was in fifth grade, he was prescribed Concerta, a medication used to treat, among other things, attention-deficit hyperactivity disorder ("ADHD"). Because the Concerta "caused him to act out more for some reason," he was instead prescribed Strattera, a similar drug, but that medication "kept him asleep all the time and dozing in school." When he was in the sixth grade, he saw a new doctor who diagnosed him with ADHD and put him back on Concerta.

In 2011, when X.T.S.W. was fourteen years old, he was examined by two psychologists who diagnosed him with bipolar disorder. A psychiatrist, Dr. Butera,

---

[5] Now known as the Texas Juvenile Justice Department.

3

prescribed Abilify, an anti-depressant, and later increased the dosage from two milligrams to five milligrams daily. Dr. Butera also prescribed sympatholytic[6] medications Intuniv and Clonidine. X.T.S.W.'s grandmother testified that the drugs prescribed by Dr. Butera are "causing [X.T.S.W.] to calm down and think before he reacts." X.T.S.W.'s grandfather testified that the new medications have made him "calmer." X.T.S.W.'s probation officer testified that, since he started taking the new medications, "he's not as explosive or he hasn't been in 24-hour detention as much as he used to be."

On appeal, X.T.S.W. faults his trial counsel for failing to call Dr. Butera to testify regarding: "how mental illnesses can be misdiagnosed for years"; "how some patients respond to certain medications and some respond to others"; "how dosages have to be monitored and changed to reach the right therapeutic levels"; "how the change of Abilify from 2 milligrams to 5 milligrams might [a]ffect [X.T.S.W.]'s behavior and allow him to control his moods at home so that he could be supervised by his grandparents"; and whether the new dosage "would allow him to control his mood swings and function normally in society." X.T.S.W. claims that, without Dr. Butera's testimony, the trial court "had no information from an expert about [X.T.S.W.]'s mental illness, his course of treatment and his future prognosis with the recent change in dosage." *See Mallet v. State*, 9 S.W.3d 856 (Tex. App.—Fort Worth 2000, no pet.) ("An attorney is ineffective if the failure to seek out and interview potential witnesses precludes the accused from advancing a viable defense.").

---

[6] Sympatholytic medications inhibit the activity of the sympathetic nervous system and are frequently used to treat ADHD. *See* IDA G. DOX, ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY S89 (West 1997).

We disagree that the record establishes trial counsel's ineffectiveness. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* Here, there is nothing in the record indicating why X.T.S.W.'s trial counsel did not subpoena Dr. Butera to appear at trial. Moreover, the trial court heard several lay witnesses testify regarding X.T.S.W.'s history of mental illness, the various medications he has been prescribed, and the relative effects of those medications on his behavior. In particular, the trial court heard unanimous testimony from X.T.S.W.'s grandparents and his probation officer that X.T.S.W.'s behavior improved at least slightly after starting the regimen prescribed by Dr. Butera. In light of this fact, we cannot conclude that counsel's failure to subpoena Dr. Butera to testify at the disposition hearing was "so outrageous that no competent attorney would have engaged in it." *See id.* Under these circumstances, we conclude that X.T.S.W. has not met his burden to overcome the "strong presumption" that his counsel's conduct was reasonable.[7]

---

[7] Even if we found counsel's performance to be deficient, X.T.S.W. has not shown a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is because counsel's alleged deficiency does not involve the issue of whether X.T.S.W. violated conditions of his community supervision. And, under the applicable statute, the trial court is authorized to modify a juvenile's disposition to commit the juvenile to the Texas Juvenile Justice Department "if the court after a hearing to modify disposition finds by a preponderance of the evidence that the child violated a reasonable and lawful order of the court." TEX. FAM. CODE ANN. § 54.04(f) (West Supp. 2011). Accordingly, even if counsel had subpoenaed Dr. Butera to testify at the disposition hearing, and even if Dr. Butera testified exactly as X.T.S.W. expected him to, there is no "reasonable probability" that the testimony would have had any effect on the court's determination that X.T.S.W. had "violated a reasonable and lawful order of the court." *See id.*

5

## III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
15th day of August, 2013.

6