ACCEPTED
03-14-00703-cr
3609471
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/29/2014 11:24:10 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00703-CR

IN THE COURT OF APPEALS

FOR THE THIRD DISTRICT OF TEXAS

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/29/2014 11:24:10 PM
JEFFREY D. KYLE
Clerk

---

TIMOTHY WHEAT, Appellant

V.

THE STATE OF TEXAS, Appellee

---

FROM THE 21ST DISTRICT COURT OF BASTROP COUNTY;
NO. 15,333; HONORABLE CHRISTOPHER D. DUGGAN, JUDGE

---

APPELLANT'S BRIEF

---

LAW OFFICE OF CHRIS M. "MATT" DILLON

Chris M. Dillon
State Bar No. 24025328
P.O. Box 446
Bastrop, Texas 78602
Telephone (512) 303-ATTY (2889)
Telecopy (866) 375-1815
dillonlaw@yahoo.com
ATTORNEY FOR APPELLANT

ORAL ARGUMENT NOT REQUESTED

# IDENTITIES OF PARTIES AND COUNSEL

Appellant
Timothy Wheat

Appellant's Attorney
Chris M. Dillon
State Bar No. 24025328
P.O. Box 446
Bastrop, Texas 78602
Telephone (512) 303-2889
Telecopy (866) 375-1815

Appellant's Attorney at Trial
Neal Pfeiffer
State Bar No. 15883500
807 Pecan
Bastrop, Texas 78602
Telephone (512) 303-6963

Appellee
The State of Texas

Attorney for the State of Texas
Bryan Goertz
Bastrop County Criminal District Attorney
804 Pecan
Bastrop, Texas 78602
Telephone (512) 581-7125

Trial Court Judge
Honorable Christopher D. Duggan
Bastrop County Courthouse
804 Pecan
Bastrop, Texas 78602
Telephone (512) 581-7137

# TABLE OF CONTENTS

Identity of Parties and Counsel…………………………………………… 2

Table of Contents…………………………………………………. 3

Index of Authorities…………………………………………………. 4

Statement of the Case………………………………………………... 5

Issues Presented…………………………………………………… 6

Statement of Facts………………………………………………… 7

Summary of the Argument………………………………………………... 15

Argument………………………………………………………….. 16

**Issues Presented**

    1. **Appellant received ineffective assistance of counsel** 16

Prayer…………………………………………………………… 23

Certificate of Service………………………………………………… 23

Certificate of Compliance………………………………………… 23

# INDEX OF AUTHORITIES

### *Statutory Law and Court Rules and Treatises*
Tex. Code Crim. Proc. art. 62.102……………………………………… 7


### *Case Law*
Strickland v. Washington, 466 U.S. 668 (1984)…………………………... 16


Ex parte Martinez, 330 S.W.3d 891 (Tex.Crim.App. 2011)………………. 17
Goodspeed v. State, 187 S.W.3d 390 (Tex.Crim.App. 2005)……………... 17
Hunnicutt v. State, 531 S.W.2d 618 (Tex.Crim.App.1976)……………….. 18
King v. State, 649 S.W.2d 42 (Tex.Crim.App.1983)……………………… 18
Lopez v. State, 343 S.W.3d 137 (Tex.Crim.App. 2011)…………………... 17
Menefield v. State, 363 S.W.3d 591 (Tex.Crim.App. 2012)……………… 17
Nava v. State, 415 S.W.3d 289 (Tex.Crim.App. 2013)…………………… 16
Perez v. State, 310 S.W.3d 890 (Tex.Crim.App. 2010)…………………… 16
Salinas v. State, 163 S.W.3d 734 (Tex.Crim.App. 2005)………………… 17
Cochran v. State, 78 S.W.3d 20 (Tex.App.—Tyler 2002, no pet .)……….. 17

## STATEMENT OF THE CASE

Appellant Timothy Wheat was convicted by a jury for the second degree felony offense of failure to register as a sex offender. This offense was enhanced by appellant's prior criminal history such that the punishment range for appellant would be 25 – 99 years or life under the habitual statute. The jury assessed appellant's punishment at 28 years in the Texas Department of Criminal Justice – Institutional Division.

Appellant presents one issue complaining of ineffective assistance of counsel. This complaint is based on the failure of trial counsel to adequately investigate appellant's case and present favorable testimony at trial.

# ISSUES PRESENTED

1.    **Appellant received ineffective assistance of counsel.**

## STATEMENT OF FACTS

Appellant was convicted in this case for failing to register as a sex offender. The allegations at trial were not that appellant had failed to register completely but that he had failed to comply with the registration requirements. See Tex. Code Crim. Proc. art. 62.102. The basis of the allegations were that appellant had changed his residence without notifying the authorities of such change.

Appellant registered his residence address as 204 BJ Mayes Road on June 14, 2013, as required and just as he had for years prior. (R.R. Vol. 5, pp. 52-53). A week later, Investigator Randall Looney of the Bastrop County Sheriff's Department performed a compliance check on appellant's address. (R.R. Vol. 5, pp. 62-63). Investigator Looney visited the residence at 204 BJ Mayes Road on June 21, 2013. (R.R. Vol. 5. p. 63). Appellant was not home at the time of Investigator Looney's visit. Id. This fact was not unexpected as appellant had also reported his employment in the registration paperwork as being a flagger for Nixon Enterprises and that his work required him to travel. (R.R. Vol. 5, p. 59).

At the time of Investigator Looney's compliance check, appellant's half-brother, Jonah Bates, Jr. ("Jr." is used throughout this brief to differentiate between Jonah Bates the father who did testify at trial while Jr.

did not), was home and spoke with Investigator Looney. The relevant testimony of the conversation between Investigator Looney and Jonah Bates, Jr. is as follows:

> Q. MS. METCALF: And when you arrived at 204 BJ Mayes Road was Mr. Wheat at the home?
>
> A. LOONEY: No, he wasn't.
>
> Q. Was there someone else at the home?
>
> A. Yes, his brother.
>
> Q. What was his brother's name?
>
> A. Jonah Bates.
>
> Q. Were you able to obtain any information from Mr. Bates with regards to whether or not Mr. Wheat lived in that home?
>
> A. Yes, ma'am, I was.
>
> Q. Did Mr. Wheat live in that home at 204 BJ Mayes Road?
>
> A. No, ma'am, he didn't. At the time of my visit, he did not, according to Mr. Bates.
>
> Q. How long had it been since Mr. Wheat lived at 204 --
>
> MR. PFEIFFER: I object to that as being something that calls for a hearsay response based on the information that Mr. Bates told him.
>
> THE COURT: Response, State.
>
> MS. METCALF: Your Honor, this is information that this officer acted upon in order to evaluate and investigate his case. Therefore, it's *not offered for the truth of the matter asserted.* But it's offered to show what this officer did in order to investigate his case. So by definition it is not hearsay under the Rules of Evidence.
>
> THE COURT: All right. I'll allow it for that purpose.
>
> Q. MS. METCALF: According to Mr. Bates, how long had it been since Mr. Wheat lived at 204 BJ Mayes Road?

A.    Let's see. Mr. Bates said that it had been towards the end of May, close to the end of May 2013, when Mr. Wheat had moved out of the residence and he hadn't seen nor heard from him since that date.

(R.R. Vol. 5, pp. 63-64) (Emphasis added).

Jonah Bates, Jr. subsequently provided a written affidavit of fact to Investigator Looney.  The relevant portion of this affidavit is stated here:

I understand that my brother, who is Timothy L. Wheat B/M 6-27-62, moved into 204 BJ Mayes when he got out of prison on or around 2000.  Timothy Wheat had lived @ 204 BJ Mayes up until the end of May 2013.  He moved out at the end of May 2013 after an incident occurred.  I have not seen or heard from Timothy since he moved out in May 2013.  I do not know where he is residing now.

(C.R. p. 91).

This affidavit was written by Investigator Looney and signed by Jonah Bates, Jr.   The affidavit was not admitted into evidence but was included as an attachment to an affidavit attached to and incorporated in the motion for new trial.

Based on the information obtained, Investigator Looney secured an arrest warrant for appellant for the offense of failure to register as a sex offender.  Appellant was arrested on June 29, 2013 in Dewitt County.  (R.R. Vol. 5, p. 66).  After his arrest, appellant was transported to Bastrop County. Id.  On July 10, 2013, Investigator Looney met with appellant while he was

still in custody. This meeting was video recorded and a written voluntary statement was also obtained from appellant. The substance of that voluntary statement is recited here:

> I, Timothy L. Wheat used to reside @ 204 BJ Mayes Rd. up until 3 or 4 months ago at which time I moved to 8400 Exchange Dr. in Austin, Tx. I lived in an apartment on Exchange Dr. I know I should have notified the Bastrop Co. Sheriff's Ofc. prior to moving but I didn't because I was scared to. I know I made a mistake by not contacting the BCSO and I will not do this again.
> (R.R. Vol. 8, State Ex. No. 3).

This statement was also written by Investigator Looney and signed by appellant.

The trial court denied appellant's motion to suppress his statements and these statements were admitted into evidence over appellant's objections. (R.R. Vol. 5, pp. 70-72).

The State only called one witness, Investigator Looney, and rested its case. (R.R. Vol. 5, p. 106). The State had subpoenaed Jonah Bates, Jr. who did appear at the courthouse and was available to testify at trial. However, neither the State nor appellant called Jonah Bates, Jr. as a witness.

Appellant's trial counsel completed an affidavit after trial concerning certain relevant matters. The relevant portion of the affidavit is included here:

> At all relevant times, the District Attorney's office in Bastrop County had provided access to its case file through its open file policy, and I was aware of reported statements including, a written statement by Jonah Bates, "Jr.", a copy of which is attached, as well as the report of Investigator Looney, who turned out to be the state's only witness. The State subpoenaed Jonah Bates, "Jr." as a witness and I was made aware of such by the District Attorney. I was also aware of a meeting between Assistant D.A., Kristin Metcalf on Tuesday, September 30th, the day trial began. Later Tuesday, while the State was still putting on evidence, I approached Jonah Bates, "Jr.", who apparently was waiting to testify, with family members and witnesses for the Defendant, in the corridor outside the courtroom.
>
> I don't recall how the conversation began, but Jonah Bates, Jr. stated that he had been waiting a long time to testify. I asked him if was aware that his father and sister were going to testify that Timothy Wheat had in fact lived at 204 B.J. Mayes Road up until the time of his arrest last year, contrary to his statement. He replied "yes". I then asked if he still planned to testify that what he said his statement was true and he stated "yes" again.
>
> The State did not call Jonah Bates, Jr., as a witness and neither did I. On Thursday, while the jury was deliberating, as to punishment, the investigator for the Defense, Allan Dickman, approached me and told me that Jonah Bates, Jr., was telling a family member that he had "wanted" to testify "for" Timothy Wheat. Later that day after the jury finally returned a verdict, Jonah Bates, Jr. came to my office and told me that he had told Assistant D.A. Metcalf earlier that week before the trial began that his written statement was not altogether true or complete. He stated to me that he had only meant to say in his written statement that he had not seen the Defendant at the house

during June 2014. He also told me that during such time he was not there himself every weekend and that he knew Timothy had a job which caused him to work out of town during the week, although I don't recall him saying that he discussed these matters with anyone from the District Attorney's office.

(C.R. pp. 89-90).

Jonah Bates, Jr. also provided an affidavit after the trial of this case and such affidavit was attached to and incorporated in appellant's motion for new trial. The substance of the statement is as follows:

> I, Jonah Bates, provided a statement to law enforcement in the investigation of this case. I was subpoenaed as a witness for the trial of Timothy Wheat and appeared at the courthouse for the trial. I was provided a copy of the statement I had previously given. One of the district attorneys (a woman) spoke to me about my previous written statement. I informed the district attorney that my written statement was misunderstood and that my testimony would be different than my previous statement. The district attorney let me know that the officer was on the stand testifying and that I would be called as the next witness. The district attorney asked me about my previous statement which I had a copy and asked me what I had planned to testify about. I let the district attorney know that my statement was inconsistent with what I planned to testify. She told me that she felt that the statement I gave previously was the truth and that I was under pressure to testify differently. She informed me that the trial was closed and that I would be in the courtroom and that I didn't have to worry about the pressure. She then informed me to be ready to be called as a witness. The fact is that Timothy Wheat continued to reside at the property although I rarely saw him because of our different schedules and because I did not want Timothy Wheat to have contact with my children. Timothy never moved from his residence but he would be out of town during the week for work which is why I rarely saw him. I informed the district attorney of these facts and that is what I would testify to in court. However, I was not

called on to testify in trial. While the jury was deliberating for sentencing, I had an opportunity to speak to Timothy's lawyer, Mr. Pfeiffer. I informed Mr. Pfeiffer at that time about the conversation I had with the district attorney and how my testimony would have been different from the written statement. I told Mr. Pfeiffer that Timothy and I hardly ever seen each other because Timothy worked for Nixon and would be out of town for work. Timothy would come back home every week to get his clothes washed and his stuff together and then would leave again for work.

(C.R. pp. 92-93).

During closing arguments, appellant's trial counsel presented argument concerning the affidavit of fact provided by Jonah Bates, Jr. to Investigator Looney. The relevant portion of this testimony is as follows:

> MR. PFEIFFER: What he had was one statement. One piece of paper. And that paper was something, I assume, from what's been eluded to, not even introduced into evidence, that paper has never been introduced into evidence -- it's been eluded to in statements here -- and the one -- the times it's been eluded, I objected to it as being hearsay. And which, of course, it is hearsay. And it was admitted by the Judge, notwithstanding my objection, because it was not offered for the truth of the matter stated, it was offered solely to show that this is what the officer had to work with at the time to pursue his investigation.
>
> Now, suddenly that statement has been elevated. It's been testified to just a few minutes ago as if it were evidence. It's not evidence. Joseph [sic] Bates is -- has not been here. Where was he yesterday?
>
> MS. METCALF: Your Honor, I'm going to object to this line of argument as Mr. Bates has been outside the courtroom, and both parties have equal subpoena power. Mr. Pfeiffer could have called him as a witness, should he have chosen.

MR. PFEIFFER: I'm going tell the jury that, Your Honor. Give me a chance.

…

MR. PFEIFFER: Your Honor, from the witness stand yesterday a witness testified when I asked where Mr. Bates was, Jonah Bates, Jr., he was outside the courtroom. That's from the witness stand. That's what I heard. What did you hear? What does the record say? Some of you are nodding -- that's what was said. That's from the witness stand. Why didn't I call him? Why didn't I call a State's witness to prove this paper that they supposedly have? I didn't know what to expect, what he probably would have said. And also, he didn't like his half-brother. He moved his kid and his other -- his kids -- having four kids -- his girlfriend, his wife, into this little house that you have pictures of here. Why would he lie? I think I might lie, too, to get those people out of the house.

This man had a bedroom. They were in the living room. Now he's out of the house, they're in the bedroom. He's someplace else. He accomplished his purpose. ***And pardon me if I did not see fit to put their witness on the witness stand*** to the facts that they should have proven.

(R.R. Vol. 6, pp. 44-46) (Emphasis added).

In apparently providing a response to this argument, the State supplied the following:

MS. METCALF: Now, the details of that confrontation, why Jonah Bates told Mr. Wheat he had to go are not before you for a reason. ***The State cannot call a witness who we know is going to lie.*** The State cannot call a witness who we know is under pressure to say falsehoods to protect someone. Mr. Bates was outside this courtroom. ***But I will not suborn perjury.***

(R.R. Vol. 6, p. 62) (Emphasis added).

## SUMMARY OF THE ARGUMENT

Appellant received ineffective assistance of trial counsel. Trial counsel failed to perform an adequate investigation into the source of the allegation that appellant no longer lived at his registered address. This source was appellant's half-brother who gave a statement to law enforcement that he had not seen appellant since May. This half-brother provided a subsequent affidavit after trial that stated his original statement was incomplete and that appellant did in fact continue to reside at the registered address but that he had not seen him because of their differing schedules. Trial counsel discovered this information while the jury was deliberating during the sentencing phase of trial. Trial counsel provided an affidavit as to his discovery of this information that was filed with appellant's motion for new trial. Trial counsel was also ineffective for failing to discover valuable impeachment evidence and failing to call the half-brother as a favorable witness at trial.

**ARGUMENT**

**1.    Appellant received ineffective assistance of counsel.**

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984); Nava v. State, 415 S.W.3d 289, 307 (Tex.Crim.App. 2013).  The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687–88; Nava, 415 S.W.3d at 307.  The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 694; Nava, 415 S.W.3d at 308.  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 700; see Perez v. State, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010).

Appellate review of counsel's representation is highly deferential and the appellate court must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance and that trial counsel's decisions were reasonably professional and

motivated by sound trial strategy. Strickland, 466 U.S. at 686; Salinas v. State, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005); see Nava, 415 S.W.3d at 307–08 ("courts indulge in a strong presumption that counsel's conduct was not deficient"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. See Menefield v. State, 363 S.W.3d 591, 592 (Tex.Crim.App. 2012); Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. Nava, 415 S.W.3d at 308; see Lopez v. State, 343 S.W.3d 137, 143 (Tex.Crim.App. 2011).

Even if an appellant shows that particular errors of counsel were unreasonable, he must further show that they actually had an adverse effect on the defense. Strickland, 466 U.S. at 693–95; Cochran v. State, 78 S.W.3d 20, 24 (Tex.App.—Tyler 2002, no pet .). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were of questionable competence. Lopez, 343 S.W.3d at 142–43. Further, merely showing that the errors had some conceivable effect on the proceedings will not suffice. Strickland, 466 U.S. at 693; Ex parte Martinez, 330 S.W.3d 891, 901 (Tex.Crim.App. 2011). The appellant must

prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. Strickland, 466 U.S. at 695.

**Defense counsel performed an inadequate investigation**

Trial counsel failed to conduct an adequate investigation and failed to discover valuable impeachment evidence. Specifically, trial counsel failed to investigate the substance of Jonah Bates, Jr.'s statement and potential testimony.

To obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, the appellant must show that Jonah Bates, Jr. had been available to testify and that his testimony would have been of some benefit to the defense. King v. State, 649 S.W.2d 42, 44 (Tex.Crim.App.1983) (counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony); see also Hunnicutt v. State, 531 S.W.2d 618 (Tex.Crim.App.1976). (appellant's complaint that his counsel failed to call witnesses at the guilt stage of the trial or character witnesses later is unwarranted in absence of showing that such witnesses were available and appellant would benefit from the presentation of such evidence).

Here, Jonah Bates, Jr. was available to testify. According to trial counsel's affidavit, trial counsel did have a brief conversation with Jonah Bates, Jr. that involved whether he would testify consistent with his prior statement. Jonah Bates, Jr. responded in the affirmative and that was the end of the inquiry. This all occurred outside the courtroom during trial on Tuesday. After trial was effectively over on Thursday, trial counsel had the opportunity to discuss the matter further with Jonah Bates, Jr. and discovered that his original statement was incomplete. Jonah Bates, Jr. informed trial counsel that his original statement was incomplete in that "he had only meant to say in his written statement that he had not seen the Defendant at the house during June 2014…that during such time he was not there himself every weekend and that he knew Timothy had a job which caused him to work out of town during the week…" (C.R. pp. 89-90).

Had this information been investigated and discovered before trial, appellant could have secured the testimony of Jonah Bates, Jr. for his motion to suppress hearing and during the guilt/innocence phase of trial.

It is interesting to note that the State apparently garnered this information on that same Tuesday. Although Jonah Bates, Jr. was subpoenaed by the State for trial and his appearance was secured pursuant to

that subpoena, the State elected not to call Jonah Bates, Jr. as a witness because:

> The State cannot call a witness who we know is going to lie. The State cannot call a witness who we know is under pressure to say falsehoods to protect someone. Mr. Bates was outside this courtroom. But I will not suborn perjury.
>
> (R.R. Vol. 6, p. 62).

According to Jonah Bates, Jr.'s subsequent affidavit attached to appellant's motion for new trial, Jr. informed the State that his prior statement was misconstrued. In that affidavit, Jonah Bates, Jr. stated:

> One of the district attorneys (a woman) spoke to me about my previous written statement. I informed the district attorney that my written statement was misunderstood and that my testimony would be different than my previous statement. The district attorney let me know that the officer was on the stand testifying and that I would be called as the next witness. The district attorney asked me about my previous statement which I had a copy and asked me what I had planned to testify about. I let the district attorney know that my statement was inconsistent with what I planned to testify. She told me that she felt that the statement I gave previously was the truth and that I was under pressure to testify differently. She informed me that the trial was closed and that I would be in the courtroom and that I didn't have to worry about the pressure.
>
> (C.R. p. 92).

This subsequent affidavit calls into question the validity of the allegation against appellant and undermines the limited investigation conducted by Investigator Looney. This is especially true when the fact that

Investigator Looney wrote the original affidavit of fact that Jr. signed.  Jonah Bates, Jr. continued in his subsequent affidavit by stating:

> The fact is that Timothy Wheat continued to reside at the property although I rarely saw him because of our different schedules and because I did not want Timothy Wheat to have contact with my children.  Timothy never moved from his residence but he would be out of town during the week for work which is why I rarely saw him.  I informed the district attorney of these facts and that is what I would testify to in court.
>
> (C.R. pp. 92-93).

The affidavits of appellant's trial counsel and Jonah Bates, Jr. attached to appellant's motion for new trial are consistent and raise a myriad of questions.  If Jonah Bates, Jr. informed the State that he intended to testify differently from his previous statement, is that why the State argued that it "will not suborn perjury?"  Why else would this type of argument be made?  If the State learned that Jonah Bates, Jr. intended to testify differently from his previous statement on Tuesday, why didn't appellant's trial counsel learn such fact then also?

The answers to these questions point directly to trial counsel's inadequate investigation.  The fact is trial counsel accepted Jonah Bates, Jr.'s original statement prepared by Investigator Looney without performing any further inquiry.  Trial counsel did present several other witnesses that

confirmed appellant's residence at his registered address. However, trial counsel did not seek the rest of the story in regards to Jonah Bates, Jr. Nor did trial counsel call Jonah Bates, Jr. as a witness at any stage of the proceeding. These errors by trial counsel were unreasonable and confirm the existence of ineffective assistance of counsel.

Judged by the totality of representation, these errors denied appellant a fair trial. The source of the original information that began the investigation of this matter provided an incomplete statement that resulted in appellant providing a statement against himself. In other words, Jonah Bates, Jr. had only intended to state that he had not seen appellant in June 2013 because of their differing schedules but that is not the way the statement was written by the investigator. This information was not learned by appellant's trial counsel until the trial was effectively ended.

Appellant was unable to question the source of the original information that led to his arrest, subsequent statement and ultimate conviction in this case. As such, appellant was denied a fair trial due to trial counsel's inadequate investigation, failure to discover valuable impeachment evidence and failure to call a favorable witness.

## PRAYER

Accordingly, appellant respectfully prays that this Court reverse the judgment of the trial court and order a new fair trial, and for such other relief to which he may be entitled.

Respectfully submitted,

_____
Chris M. Dillon
State Bar No. 24025328
P.O. Box 446
Bastrop, Texas 78602
Telephone (512) 303-2889
Telecopy (866) 375-1815
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant Timothy Wheat's Brief on Appeal has been served on Bryan Goertz, 804 Pecan, Bastrop, Texas 78602 on the 29th day of December 2014 via facsimile transmission.

_____
Chris M. Dillon

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 4,791 words.

_____
Chris M. Dillon

I further certify that this submitted computer disc or CD (or email attachment) complies with the following requests of the Court:

1.    This filing is labeled with or accompanied by the following information:

    a.  Case Name: Timothy Wheat v. State
    b.  The Docket Number: 03-14-00703-CR
    c.  The Type of Brief: Appellant's Brief
    d.  The Word Processing Software and Version Used to prepare the filing: Microsoft Word 2010 converted to Adobe PDF

2.    This disc or CD (or email attachment) contains only an electronic copy of the submitted filing and does not contain any appendices, any portion of the appellate record (other than a portion contained in the text of the filing) hypertext links to other material, or any document that is not included in the filing.

3.    The electronic filing is free of viruses or any other files that would be disruptive to the Court's computer system.

4.    I understand that a copy of this filing will be posted on the Court's web site and becomes part of the Court's record.

5.    Copies have been sent to all parties associated with this case.

Chris M. Dillon
December 29, 2014